952 So.2d 934 (2007)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Bruce ROBERTS.
No. 2006-JP-01016-SCT.
Supreme Court of Mississippi.
March 29, 2007.
*935 Luther T. Brantley, III, attorney for appellant.
Bruce Roberts, appellee, pro se.
EN BANC.
GRAVES, Justice, for the Court.
¶ 1. The Mississippi Commission on Judicial Performance (Commission) recommended that Harrison County Justice Court Judge Bruce Roberts be publicly reprimanded, suspended for thirty (30) days without pay, fined $1,500 and assessed costs of $100 for judicial misconduct. Judge Roberts does not deny the misconduct alleged by the Commission, but asks this Court to consider mitigating evidence and, at most, to adopt the Commission's recommendations. Finding that Judge Roberts did engage in misconduct, this Court adopts the Commission's recommendation and orders that Judge Roberts be publicly reprimanded, suspended for thirty (30) days without pay, fined $1,500 and assessed costs of $100.

FACTS
¶ 2. As the facts are not in dispute, the following are quoted from the Commission's Findings of Fact, Conclusions of Law and Recommendation:
On or about October 7, 2002, Mr. Dennis M. Klubnik filed simple assault-domestic violence charges against his ex-wife, Jodi Klubnik, at the Harrison County Justice Court, Cause No. GT056/1453. The matter was set for trial on July 16, 2004 before Respondent. Ms. Klubnik plead [sic] guilty to the charges and was fined $500.00, which was suspended, and assessed costs of court. After the plea was accepted by Respondent, he voiced his opinion in open court that it was ridiculous that Mr. Klubnik had filed the charges against the ex-wife and that the domestic violence statutes were designed to protect women.
On January 15, 2004, Jodi Klubnik filed charges against Dennis Klubnik for trespassing, Cause No. GT058/131, Harrison County Justice Court. Klubnik was arrested on that date. A trial was scheduled for September 13, 2004. At trial, Respondent remanded the charges to the file for a period of two (2) years. Respondent did not allow Klubnik to present any evidence and threatened to incarcerate him for six (6) months if he appeared before him again within the next two (2) years.
On or about September 20, 2004, John Wesley Cole was arrested in Gulfport, Mississippi on the charge of murder, State of Mississippi v. John Wesley Cole, Cause No. GF065/0136, Harrison County Justice Court. Respondent, after speaking with law enforcement personnel, set Cole's bond at $250,000.00 and Cole bonded out of jail the next day.
On Wednesday, September 22, 2004, an article appeared in the Sun Herald newspaper, stating that Cole had been released on bond and that the victim's family was disappointed and felt the bond amount was insufficient. Later that day, Respondent, without notice, affidavit or additional information, issued an Alias Warrant ordering Harrison County law enforcement officials to immediately re-arrest Cole. Simultaneously therewith, Respondent issued an Order for Preliminary Hearing setting aside the previous bond of $250,000.00 and ordering Cole held without bond pending a preliminary hearing. As a result, *936 Cole was re-arrested and held without bond.
On Friday, September 24, 2004, Respondent was quoted in an article published by the Sun Herald [sic] and stated that "The bond I set originally was based on information available to me at the time I was approached by police officers. Upon review of additional information, I issued an alias warrant, or a secondary or additional warrant, that he be re-arrested and be held without bond pending a preliminary hearing on this matter." Coles [sic] petitioned the Circuit Court for his release on the previous bond amount and was released following a hearing on September 30, 2004.
On October 13, 2003, Travis L. Page, Jr. was arrested by the Harrison County Sheriff's Department on charges of Driving Under the Influence-2nd offense, Driving Under Suspension and Improper Lane Usage, Cause Nos. GT113/0516-0518, State of Mississippi v. Travis L. Page, Jr., Harrison County Justice Court.
A trial on the above charges was scheduled for March 9, 2004 before Respondent. Page entered a guilty plea to Driving Under the Influence-2nd offense and Driving Under Suspension. The prosecution nolle prosequied the charge of Improper Lane Usage. Respondent sentenced Page to six (6) months on each of the charges to which he plead [sic] guilty, but suspended all but seven (7) days of the sentence which were to be served on the weekends, plus fines and costs of court. On March 12, 2004, the first weekend Page was to report to serve his time, Page arrived at the jail allegedly smelling of alcohol. The deputy at the jail called Respondent who revoked Page's weekend sentence and ordered the jailer to hold Page with no bond pending an initial appearance. The deputies subsequently filed an affidavit against Page charging him with Public Drunk and Disorderly Conduct. See State of Mississippi v. Travis L. Page, Jr., Cause Nos. 058/395 and 396, Harrison County Justice Court.
On March 24, 2004, Page appeared before Respondent for a revocation hearing though no affidavit or petition for revocation had been filed with the Court. Counsel for Page objected to going forward with the revocation hearing without any filings in place and proper notice to Page. At the insistence of Page's counsel, Respondent released Page on that date, after spending twelve (12) days in jail with no bond.
In August, 2004, Page again appeared before Respondent for a hearing on the revocation of probation. Still no affidavit or Petition to Revoke had been served on Page. Counsel for Page requested that Respondent recuse himself from the case due to a conflict of interest. Respondent agreed to recuse himself from the case and Judge Louise D. Ladner was asked to hear the matter.
On September 22, 2004, Page was scheduled to appear before the Court on the charges of Public Drunk and Disorderly Conduct and other misdemeanors. Upon arrival, Page was served with a Petition to Revoke filed that date. Over the objections of Page's attorney, citing Respondent's previous recusal, Respondent informed Page that he would hear the revocation matter. Counsel for Page again asked Respondent to recuse himself due to statements made by Respondent prior to the hearing that he wanted to give Page significant jail time. Respondent refused to recuse and went forward with the hearing.
Respondent, at the start of the revocation hearing, admitted that he had previously recused himself from the *937 Public Drunk and Disorderly Conduct cases against Page, but since the affiant on those charges was not present at the hearing, he dismissed the Public Drunk and Disorderly Conduct charges on his own motion. The hearing on the revocation continued over objections of counsel due to the recusal issues and lack of proper notice since Page had been served with the Petition for Revocation just that morning. At the conclusion of the hearing, Respondent found that Page had violated his probation and sentenced him to 90 days on Driving Under the Influence-2nd offense and 90 days on the Driving Under Suspension charge, the sentences to run concurrent.
On or about April 8, 2004, Levi Pace Corr Stanley was arrested by the Harrison County Sheriff's Department on charges of Careless Driving and Driving Under the Influence-1st offense, State of Mississippi v. Levi Pace Corr Stanley, Cause Nos. GT120/190 and 191. On March 1, 2005, Respondent held a trial on the charges and as a result found Stanley not guilty of the Driving Under the Influence-1st offense charge and guilty of Careless Driving. In addition, Respondent, without legal authority to do so, ordered Stanley not to drive a vehicle in Harrison County, Mississippi for a period of two (2) years.
On or about September 4, 2004, Sarah J. Ivy was issued a citation in Harrison County, Mississippi, for speeding, State of Mississippi v. Sarah Ivy, Cause No. GT126/0811. On November 1, 2004, Jim Davis, an attorney, mailed a letter to the Justice Court Clerk of Harrison County, Mississippi, advising the court of his representation of Ms. Ivy and requesting a plea of not guilty be entered on her behalf and that a trial date be set in the matter. The letter was placed in the court file.
Having heard nothing regarding a trial date, Davis' office personnel faxed a copy of the November 1, 2004, letter to Rachel at the Harrison County Justice Court on February 1, 2005 and again requested a trial date. Again, having received no response, Davis faxed and mailed a letter to the Justice Court Clerk of Harrison County on February 7, 2005, advising of his representation of Ms. Ivy and requesting a court date. Davis enclosed a copy of the November 1, 2004 letter. The February 7, 2005 letter was placed in the court file.
On February 7, 2005, Davis received a telephone call from a fellow attorney advising him that the Ivy case had been called for trial in the Justice Court of Harrison County by Respondent. Neither Davis nor his client, Ms. Ivy, responded and she was tried in absentia, found guilty of speeding and fined $100.00 plus court costs. In addition, Respondent issued a bench warrant for the arrest of Davis for contempt of court. Davis immediately appeared before Respondent and advised he had not been advised of the court date and should not be arrested on the bench warrant. While he was appearing before Respondent, a law enforcement official arrived at Davis' office to arrest him on the bench warrant. Respondent, upon reviewing the file, determined that Davis did not have notice to appear and cancelled the warrant.
On or about February 4, 2005, Calvin Taylor, an attorney in Pascagoula, Mississippi called the Justice Court of Harrison, Mississippi and requested, on behalf of his client, Mr. Kempson, a continuance of a matter set for February 7, 2005, State of Mississippi v. Kevin Kempson, Cause No. GT 057/1058. An Order of Continuance was prepared by Taylor and forwarded to the Respondent for his signature. *938 On February 7, 2005 at approximately 11:30 a.m. Respondent called Taylor's law office, spoke with Taylor's office personnel, and angrily demanded that Taylor appear before him at 1:00 p.m. Respondent stated that the failure of Taylor to appear would result in a bench warrant being issued for his arrest. Taylor, upon learning of the threat, authored a letter to Respondent advising him of the law regarding the issuance of arrest warrants and explaining civil remedies to Taylor in the event Respondent had him arrested illegally. Though a warrant was issued, it was never served on Taylor.
On or about October 27, 2004, Leon A. Hamilton appeared before Respondent to enter a plea of not guilty to charges of No Driver's License and No Proof of Insurance, State of Mississippi v. Leon Hamilton, Cause Nos. GT125/764 & 765, Harrison County Justice Court. It was brought to the attention of Respondent that Hamilton had some outstanding fines levied by the Court on September 2, 1987 for Improper Driver's License, No Motor Vehicle Inspection and Expired Tag. Respondent, without proper motion of the prosecutor or defendant, and without authority to do so, dismissed the 1987 cases, as stale cases, thereby failing to collect fines or assessments due Harrison County. Also, Respondent improperly set aside the orders of another judge without notice or hearing.
On or about March 7, 2005, Michael S. Stepp was issued a citation by the Harrison County Sheriff's Department for Driving with a Suspended License, Harrison County Justice Court No. GT131/252. On April 13, 2005, Stepp appeared before Defendant to enter a plea. Respondent, without the prosecutor or affiant present, with no proper motion pending before him, and without legal authority to do so, amended the charge to No Driver's License and accepted a guilty plea from Stepp.
¶ 3. The Commission asserts that Roberts is in violation of Canons 1, 2 A, 2 B, 3 B(1), 3 B(2), 3 B(4), 3 B(5), 3 B(7), 3 B(8), 3 B(9), 3 C(1) and 3 E of the Code of Judicial Conduct. Further, the Commission asserts that Roberts' conduct constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, pursuant to Section 177A of the Mississippi Constitution, as amended.

DISCUSSION
¶ 4. The standard of review for judicial misconduct is de novo. Miss. Comm'n on Judicial Performance v. Gunn, 614 So.2d 387, 389 (Miss.1993). While this Court gives "great deference" to the Commission's findings, we are obligated to make an independent inquiry. Miss. Comm'n on Judicial Performance v. Peyton, 555 So.2d 1036, 1038 (Miss.1990).
I. WHETHER THE CONDUCT OF THE RESPONDENT, JUSTICE COURT JUDGE BRUCE ROBERTS, CONSTITUTED WILLFUL MISCONDUCT IN OFFICE AND CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE WHICH BROUGHT THE JUDICIAL OFFICE INTO DISREPUTE, PURSUANT TO SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED.
¶ 5. The Commission found by clear and convincing evidence that Judge Roberts' conduct violated Canons 1, 2 A, 2 B, 3 B(1), 3 B(2), 3 B(4), 3 B(5), 3 B(7), 3 B(8), 3 B(9), 3 C(1) and 3 E of the Code of Judicial Conduct. Further, the Commission found by clear and convincing evidence that *939 Judge Roberts engaged in willful misconduct and conduct prejudicial to the administration of justice which brings the judicial office into disrepute in violation of the provisions of the Mississippi Constitution. This Court has held:
Willful misconduct in office is the improper or wrongful use of power of his office by a judge acting intentionally or with gross unconcern for his conduct and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. . . . Willful misconduct in office of necessity is conduct prejudicial to the administration of justice that brings the judicial office into disrepute. However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute.
Miss. Comm'n on Judicial Performance v. Carr, 786 So.2d 1055, 1058-59 (Miss.2001).
¶ 6. Judge Roberts has agreed to the Commission's recommendation and has joined the Commission's motion for approval of recommendations. Further, Judge Roberts acknowledges that he engaged in the conduct in violation of the Code of Judicial Conduct. As there is no dispute of relevant facts and because Judge Roberts admits that his actions were in violation of the judicial canons, we must determine the appropriate sanctions.
II. WHETHER PUBLIC REPRIMAND, SUSPENSION FROM OFFICE AND ASSESSMENT OF COSTS ARE APPROPRIATE SANCTIONS.
¶ 7. Judge Roberts is accused of violating Canons 1, 2 A, 2 B, 3 B(1), 3 B(2), 3 B(4), 3 B(5), 3 B(7), 3 B(8), 3 B(9), 3 C(1) and 3 E of the Code of Judicial Conduct. Canon 1 requires that a judge "shall up-hold the integrity and independence of the judiciary." The other canons state, in relevant part:

CANON 2
A judge shall avoid impropriety and the appearance of impropriety in all activities.
A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
B. Judge shall not allow their family, social, or other relationships to influence the judges' judicial conduct or judgment. Judges shall not lend the prestige of their offices to advance the private interests of the judges or others; nor shall judges convey or permit others to convey the impression that they are in a special position to influence the judges. Judges shall not testify voluntarily as character witnesses.

CANON 3
A judge shall perform the duties of judicial office impartially and diligently.
A. Judicial Duties in General. The judicial duties of judges take precedence over all their other activities. The judges' judicial duties include all the duties of their office prescribed by law. In the performance of these duties, the following standards apply.
B. Adjudicative Responsibilities.
(1) A judge shall hear and decide all assigned matters within the judge's jurisdiction except those in which disqualification is required.

*940 (2) A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.
(3) A judge shall require order and decorum in proceedings before the judge.
(4) Judges shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom they deal in their official capacities, and shall require similar conduct of lawyers, and of their staffs, court officials, and others subject to their direction and control.
(5) A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic status, and shall not permit staff, court officials and others subject to the judge's direction and control to do so. A judge shall refrain from speech, gestures or other conduct that could reasonably be perceived as sexual harassment and shall require the same standard of conduct of others subject to the judge's direction and control.
(6) A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based upon race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic status, against parties, witnesses, counsel or others. This Section 3 B(6) does not preclude legitimate advocacy when race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic status, or other similar factors, are issues in the proceedings.
(7) A judge shall accord to all who are legally interested in a proceeding, or their lawyers, the right to be heard according to law. A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:
(a) where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized: provided:
(i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and
(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.
(b) Judges may obtain the advice of a disinterested expert on the law applicable to a proceeding before them if the judges give notice to the parties of the person consulted and the substance of the advice, and afford the parties reasonable opportunity to respond.
(c) A judge may consult with court personnel whose function is to aid the judge in carrying out the judge's adjudicative responsibilities or with other judges.
(d) A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to mediate or settle matters pending before the judge.
(e) A judge may initiate or consider any ex parte communications when expressly authorized by law to do so.

*941 (8) A judge shall dispose of all judicial matters promptly, efficiently and fairly.
(9) A judge shall not, while a proceeding is pending or impending in any court, make any public comment that might reasonably be expected to affect its outcome or impair its fairness or make any nonpublic comment that might substantially interfere with a fair trial or hearing. The judge shall require similar abstention on the part of court personnel subject to the judge's direction and control. This Section does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court. This Section does not apply to proceedings in which the judge is a litigant in a personal capacity.
. . . .
C. Administrative Responsibilities.
(1) A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and shall cooperate with other judges and court officials in the administration of court business.
. . . .
E. Disqualification.
(1) Judges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances or for other grounds provided in the Code of Judicial Conduct or otherwise as provided by law, including but not limited to instances where:
(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(b) the judge served as lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
(c) the judge knows that the judge, individually or as a fiduciary, or the judge's spouse or member of the judge's family residing in the judge's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
(d) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
(i) is a party to the proceeding, or an officer, director, or trustee of a party;
(ii) is acting as a lawyer in the proceeding;
(iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
(iv) is to the judge's knowledge likely to be a material witness in the proceeding;
(2) Recusal of Judges from Lawsuits Involving Major Donors. A party may file a motion to recuse a judge based on the fact that an opposing party or counsel of record for that party is a major donor to the election campaign of such judge. Such motions will be filed, considered and subject to appellate review as provided for other motions for recusal.
In determining appropriate sanctions, this Court applies the following test:

*942 (1) The length and character of the judge's public service; (2) Whether there is any prior case law on point; (3) The magnitude of the offense and the harm suffered; (4) Whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) Whether moral turpitude was involved; and (6) The presence or absence of mitigating or aggravating circumstances.
Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004).
¶ 8. First, Judge Roberts is serving his first term as a Justice Court Judge and has no previous formal complaints filed against him. Second, there is prior case law on point. See Miss. Comm'n on Judicial Performance v. McPhail, 874 So.2d 441 (Miss.2004). Third, Roberts violated various judicial canons numerous times. Fourth, Roberts had multiple complaints filed against him, but no formal complaints previously filed by the Commission. Fifth, the Commission admits, and we agree, that moral turpitude was not involved. Sixth, the Commission concedes that Roberts did not gain personally or financially from his actions and that Roberts has no previous record of judicial misconduct with the Commission.
¶ 9. The concurring opinion asserts that Judge Roberts' conduct did involve moral turpitude and cites Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155 (Miss.2004), and Miss. Comm'n on Judicial Performance v. Sanford, 941 So.2d 209 (Miss.2006). In Gibson, this Court quoted the willful misconduct language and found that Judge Gibson's "actions constituted willful misconduct prejudicial to the administration of justice which brought the judicial office into disrepute. . . ." Id. at 1157. This Court stated in a footnote that "[m]oral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute." Id. at 1158, n. 2. However, this Court found that "there was no moral turpitude involved" where Judge Gibson dismissed fines and/or tickets and set aside a judgment of another judge. Based on Gibson, this Court did not deviate from the quoted language above which clearly indicates willful misconduct can, but does not always, include moral turpitude.
¶ 10. In Sanford, this Court found that the conduct involved moral turpitude, as quoted in the concurring opinion. However, this Court did so by weighing the morality of the actions and finding that the "case involves some of the basic tenets of daily living in a civil society. . . ." Sanford, 941 So.2d at 217. Additionally, as the concurring opinion points out, Judge Sanford's conduct was more egregious than Judge Roberts' conduct. Therefore, even Sanford does not support a finding of moral turpitude in this case.
¶ 11. As stated previously, this Court has said that moral turpitude can include, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute. These are merely guidelines for actions that may involve moral turpitude. Based on the clearly established precedent and the actual definition of moral turpitude, an action must involve some immorality to rise to the level of moral turpitude. Further, actions involving interference with the administration of justice or which bring the judiciary into disrepute do not necessarily include moral turpitude. If they did, then this Court would have to make a finding of moral turpitude every time it found that a judge should be reprimanded.
*943 ¶ 12. Judge Roberts' actions involved procedural matters and ignorance of the law. There are no allegations that Judge Roberts attempted to fix a ticket or to improperly influence the outcome of a Driving Under the Influence (DUI) charge. Likewise, there are no allegations that Judge Roberts engaged in any deceitful, corrupt, or in any other way immoral activity. It is impossible to reconcile actions involving procedural matters and/or ignorance of the law with fraud, deceit, corruption, etc. This Court has consistently found that actions involving procedural matters and/or ignorance of the law do not necessarily rise to the level of moral turpitude. See Miss. Comm'n on Judicial Performance v. Justice Court Judge T.T., 922 So.2d 781, 786 (Miss.2006). See also Gibson, 883 So.2d 1155.
¶ 13. Therefore, we find that Judge Roberts' conduct did not involve moral turpitude.

CONCLUSION
¶ 14. Based on Judge Roberts' misconduct and his agreement with the Commission's recommendation, we find that Judge Roberts should be publicly reprimanded, suspended for thirty (30) days without pay, fined $1,500 and assessed costs of $100 for judicial misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
¶ 15. JUDGE BRUCE ROBERTS, JUSTICE COURT JUDGE FOR HARRISON COUNTY, SHALL BE PUBLICLY REPRIMANDED, SUSPENDED FOR THIRTY (30) DAYS WITHOUT PAY, FINED $1,500 AND ASSESSED COSTS OF $100.
SMITH, C.J., EASLEY AND DICKINSON, JJ., CONCUR. WALLER, P.J., CONCUR IN PART AND IN RESULT. COBB, P.J., CONCURS IN RESULT ONLY. CARLSON, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY WALLER AND COBB, P.JJ., AND RANDOLPH, J. DIAZ, J., NOT PARTICIPATING.
CARLSON, Justice, Concurring in Part and in Result:
¶ 16. While I join my colleagues in the plurality in finding that Judge Roberts should be publicly reprimanded, suspended from his judicial office for thirty days without pay, and assessed a fine and costs, I write separately to address the plurality's treatment of one of the Gibson factors. Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004). That factor is moral turpitude.
¶ 17. In Gibson, we modified the factors which had been espoused in In Re Baker, 535 So.2d 47, 54 (Miss.1988). The factors which we now follow in making the determination of the appropriate sanctions in all judicial misconduct cases are: "(1) The length and character of the judge's public service; (2) Whether there is any prior case law on point; (3) The magnitude of the offense and the harm suffered; (4) Whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) Whether moral turpitude was involved; and (6) The presence or absence of mitigating or aggravating circumstances." Gibson, 883 So.2d at 1158.
¶ 18. In a footnote, we stated in Gibson that "[m]oral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute." Id. at 1158, n. 2. However, in today's case, we have found that Judge Roberts's actions did not involve moral turpitude. On this *944 point, we simply state, "[f]ifth, the Commission admits, and we agree, that moral turpitude was not involved."
¶ 19. However, in the recent case of Miss. Comm'n on Judicial Performance v. Sanford, 941 So.2d 209, 216-17 (Miss. 2006), we revisited our treatment of moral turpitude, and stated:
¶ 15. Fifth, admittedly contrary to our holding in Blakeney I,[1] where we summarily found that "[t]here were no allegations that Judge Blakeney's violations involved moral turpitude," 848 So.2d at 827, we are convinced, upon reflection, that such action by a judge does indeed involve moral turpitude. After all, we have previously stated that "[m]oral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute." Gibson, 883 So.2d at 1158. We now find that, contrary to the assertions of the Commission and Judge Sanford that there is no evidence of moral turpitude in this case, today's facts, which are not only undisputed, but agreed upon by both the Commission and Judge Sanford, clearly and convincingly prove that Judge Sanford's actions involved moral turpitude. We feel compelled to ask this question: If a judge's clandestinely approaching the chief law enforcement official of the county to have that officer in turn approach the arresting officer in a DUI case and request (or conceivably demand) on the part of the judge that the arresting officer simply fail to appear for court so that the DUI case can be dismissed for lack of prosecution, are not actions representative of conduct exhibiting at the very least fraud, deceit, extortion and interference with the administration of justice, thus bringing the judicial office and the judiciary in general into disrepute, what judicial misconduct is required before a judge has committed an act of judicial misconduct involving moral turpitude? After all, this case is not about a judge's conduct because of a judge's lack of judicial education or training. This case involves some of the basic tenets of daily living in a civil society, such as living by standards of fundamental decency and honesty by not abusing the judicial process, and by revering the law and the judicial system, and upholding the dignity and respect of the judiciary through appropriate conduct and behavior toward others. Judge Sanford's actions are clearly indicative of judicial misconduct exhibiting moral turpitude.
Id. at 216-17.
¶ 20. In today's case, Judge Roberts committed such acts as (1) prohibiting a defendant from defending himself in a trespassing charge filed by his ex-wife and threatening the defendant with incarceration if he appeared before him again within the next two years thereafter; (2) acting sua sponte (in reacting to media coverage) by issuing a warrant to re-arrest a criminal defendant who had posted a bond which had previously been set by Judge Roberts; (3) attempting sua sponte to revoke a defendant's probation without the filing of any written petition or affidavit, refusing to recuse himself from the proceedings, and revoking the defendant's probation over the continuous objections of the defendant's attorney that Judge Roberts was acting without authority; (4) ordering a DUI-1st offense defendant not to drive a vehicle in Harrison County for two years after finding the defendant not guilty of DUI; (5) issuing arrest warrants *945 without just cause on two separate occasions, to have attorneys jailed; (6) dismissing cases without notice, resulting in previously assessed fines and other assessments going uncollected; (7) setting aside the orders of another judge, without notice; and, (8) amending charges, without authority, against a defendant, without the affiant or the prosecutor being present.
¶ 21. Therefore, similar to the question we asked in Sanford, I would ask today that if Judge Roberts's actions, as I have outlined in the above paragraph, do not involve moral turpitude by interfering with the administration of justice, "what judicial misconduct is required before a judge has committed an act of judicial misconduct involving moral turpitude?"
¶ 22. For these reasons, I am constrained to write separately and state that this case against Judge Roberts does in fact involve moral turpitude, and, consistent with Sanford, we should say so. With this having been said, I concur in our decision today that Judge Roberts be publicly reprimanded, suspended without pay for thirty days, and assessed with a fine and costs, all because his actions clearly reveal that he is guilty of judicial misconduct in office and conduct prejudicial to the administration of justice, which brings his judicial office into disrepute.
WALLER AND COBB, P.JJ., AND RANDOLPH, J., JOIN THIS OPINION.
NOTES
[1] Miss. Comm'n on Judicial Performance v. Blakeney, 848 So.2d 824 (Miss.2003).