967 So.2d 12 (2007)
MISSISSIPPI COMMISSION ON JUDICIAL PERFORMANCE
v.
Robert Earl FOWLKES.
No. 2007-JP-00455-SCT.
Supreme Court of Mississippi.
October 18, 2007.
*13 Luther T. Brantley, III, Darlene D. Ballard, attorney for appellant.
Michael Malski, Amory, attorney for appellee.
EN BANC.
SMITH, Chief Justice, for the Court.
¶ 1. On September 20, 2006, the Mississippi Commission on Judicial Performance (Commission) filed a Formal Complaint charging the Respondent, Robert Earl Fowlkes, Justice Court Judge for District Two, Monroe County, Mississippi, with violating Canons 1, 2A, 2B, 3B(2), 3B(8) and 3C(1) of the Code of Judicial Conduct, conduct actionable pursuant to the provisions of Article 6, Section 177A of the Mississippi Constitution of 1980, as amended.
¶ 2. After requesting additional time to respond, Judge Fowlkes filed his Answer to the Formal Complaint wherein he denied the allegations. Later, Judge Fowlkes joined the Commission in submitting an Agreed Statement of Facts and Proposed Recommendation, wherein Judge Fowlkes acknowledged judicial misconduct. The Agreed Statement of Facts and Recommendation were accepted and adopted by the Commission and are now before this Court for its approval.

FINDINGS OF FACT
¶ 3. Relying upon the advice given in an ex parte conversation with Judge Fowlkes, on or about December 15, 2004, Gail W. Reeves filed a General Affidavit against Harold Hood in the Justice Court of Monroe County, Mississippi, in State v. Hood, Docket 196, Page 246-47, for trespass and malicious mischief. On or about December 23, 2004, again upon ex parte conversation with Judge Fowlkes, Reeves filed a General Affidavit against her neighbor, William Blevins, for malicious mischief in the Justice Court of Monroe County, Mississippi, in State v. Blevins, Docket 196, Page 313, for malicious mischief. The cases were assigned to Judge Fowlkes.
¶ 4. The charge against Blevins was heard on March 29, 2005, and on April 25, 2005, Judge Fowlkes found Blevins not guilty of malicious mischief. Some time after the hearing, Reeves and Judge Fowlkes engaged in an ex parte conversation at which time they discussed Blevins's March 29, 2005, hearing, as well as the upcoming hearing involving Hood. Judge Fowlkes also advised Reeves that she could file a civil suit against Hood. On May 26, 2005, Judge Fowlkes heard the charges against Hood and found him guilty of both trespassing and malicious mischief. Hood was ordered to pay restitution in the amount of $2,750 and total fines in the amount of $419. Thereafter, Hood appealed the decision to the Circuit Court of Monroe County, which appeal was to have been heard on November 7, 2005.
¶ 5. After receiving subpoenas to appear in court on November 7, 2005, Reeves contacted Judge Fowlkes concerning the possible dismissal of the Circuit Court proceeding against Hood. During their ex parte conversation, Judge Fowlkes discussed the request for dismissal and advised her to call Circuit Clerk Judy Butler *14 about getting a special prosecutor to replace Prosecuting Attorney Don Baker. Judge Fowlkes also stated that he would call John Creekmore, the Board Attorney, to see what needed to be done and agreed to later contact Reeves. On November 7, 2005, Hood did not appear at the scheduled hearing. Consequently, on November 8, 2005, Circuit Judge Sharion Aycock issued Writs of Procedendo in both the trespass and malicious mischief cases.
¶ 6. On January 26, 2006, Judge Aycock signed Agreed Orders of Dismissal on both the trespass and malicious mischief charges. The Circuit Court quashed both Writs of Procedendo and found that Hood did not receive notice of the November 7, 2005, hearings, had "double jeopardy" protection, given that the Monroe County Justice Court had no jurisdiction to hear the offense of malicious mischief as a misdemeanor, and that Hood was not guilty of malicious mischief. Additionally, the Court found that there was reasonable doubt of the commission of trespass, and Hood was found not guilty of that charge as well.
¶ 7. Upon the advice of Judge Fowlkes, Reeves decided to file a civil suit in Monroe County Justice Court against Hood for $2,500 plus $54 in costs. On January 3, 2006, Reeves filed an Affidavit to Open Account against Hood in the Justice Court of Monroe County, Mississippi, in Reeves v. Hood, Docket 69, Page 134. The court date was set for January 26, 2006. On or about January 24, 2006, Hood filed a motion seeking recusal of Judge Fowlkes. Judge Fowlkes entered his recusal on January 25, 2006.
¶ 8. On or about January 31, 2006, Hood filed a Motion to Dismiss based upon what he alleges was an improper Affidavit to Open Account. On February 14, 2006, Judge Andy Hood awarded judgment for Reeves in the amount of $2,500 plus $54 in costs. Hood then appealed to the Monroe County Circuit Court where the matter was set for a non-jury trial on June 26, 2006.
¶ 9. In a prior case, in December 2003, Judge Fowlkes received a private admonishment. In that case, he acknowledged misconduct including improper ex parte communications regarding a pending matter and using his influence as a judge to advance the private interest of others. Not more than one year later, Judge Fowlkes committed virtually the same type of judicial misconduct. Once again, he acknowledges in the Memorandum Brief in Support of Joint Motion for Approval of Recommendations Filed by the Mississippi Commission on Judicial Performance that it is improper to participate in ex parte conversations with parties regarding pending matters and that doing so constitutes misconduct.
¶ 10. After reviewing the pleadings, the Agreed Statement of Facts and Proposed Recommendation, the Commission found that by engaging in the aforementioned conduct, the Respondent violated Canons 1, 2A, 2B, 3B(2), 3B(8) and 3C(1) of the Code of Judicial Conduct. The Commission found that Fowlkes's conduct was therefore actionable pursuant to the provisions of Article 6, Section 177A of the Mississippi Constitution of 1980, as amended, as said conduct constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

DISCUSSION
¶ 11. "This Court conducts de novo review of judicial misconduct proceedings, giving great deference to the findings, based on clear and convincing evidence, of the recommendations of the Commission." Miss. Comm'n on Judicial Performance v. Gordon, 955 So.2d 300, 303 (Miss.2007). As this Court has "`the sole *15 power to impose sanctions in judicial misconduct cases,' we are obligated to render an independent judgment on the charges." Id. (quoting Miss. Comm'n on Judicial Performance v. Gibson, 883 So.2d 1155, 1157 (Miss.2004)). This Court is not bound by the findings of the Commission. Additional sanctions may be imposed.
¶ 12. Section 177A of the Mississippi Constitution provides that upon recommendation of the Commission, a judge may be removed, suspended, fined, publicly censured, or publicly reprimanded by the Supreme Court. To so sanction a judge, the Court must find one or more enumerated grounds for sanction, including willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.
¶ 13. Pursuant to this Court's holding in Mississippi Commission on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004), this Court must review the following mitigating factors when determining the appropriateness of a recommended sanction:
(1) The length and character of the judge's public service.
¶ 14. Respondent has served as Justice Court Judge of Monroe County for seven years.
(2) Whether there is any prior case law on point.
¶ 15. A great deal of judicial precedent exists on these issues. See case law cited infra.
(3) The magnitude of the offense and the harm suffered.
¶ 16. The Respondent's ex parte communications and giving of legal advice to a litigant is prohibited. The litigants who appear before the Respondent deserve a fair and independent judiciary, which the parties in this case did not receive. Therefore, the parties suffered harm, and the public perception of the judiciary was impugned.
(4) Whether the misconduct is an isolated incident or evidences a pattern of conduct.
¶ 17. In December 2003, Respondent signed an Agreed Statement of Facts and Proposed Recommendation wherein he acknowledged that it is improper to participate in ex parte conversations with parties concerning a pending matter or to use his influence as a judge to advance the private interests of others. For this violation, the Commission recommended a private admonishment. One year later, in December 2004 continuing through 2005, Respondent repeatedly engaged in prohibited ex parte conversations with a litigant and offered advice as to actions the litigant should take to advance her case.
(5) Whether moral turpitude was involved.
¶ 18. The record does not demonstrate that moral turpitude was involved.
(6) The presence or absence of mitigating or aggravating circumstances.
¶ 19. Aggravating circumstances are present in that Respondent, after being privately admonished, again engaged in ex parte conversations with litigants. However, mitigating circumstances also exist, which include the fact that the Respondent has readily acknowledged his inappropriate conduct and has entered into the Agreed Statement of Facts and Proposed Recommendation with the Commission.
¶ 20. As this Court stated in In re Bailey, 541 So.2d 1036, 1039 (Miss.1989):
There are good reasons why our justice court judges must regard scrupulously the nature of their office. In the first place, most of our citizens have their primary, if not their only, direct contact with the law through the office of the *16 justice court judge. See In re Garner, 466 So.2d 884, 887 (Miss.1985). The perception of justice of most of our citizens is forged out of their experiences with our justice court judges.
Id. at 1039. More recently, in acknowledging our decision in Bailey, we stated that justice court judges are admittedly "on the front line `where the rubber meets the road' as far as constant contact with our citizens." Comm'n on Judicial Performance v. Sanford, 941 So.2d 209, 218 (Miss.2006). We went further in Sanford and stated:
Justice courts will ordinarily have a much greater volume of cases than our state trial courts or appellate courts. Our citizenry's overall perception of the entire judicial system in this state is quite often a result of contact with our justice courts, since the vast majority of our citizens will have little or no contact with our state trial or appellate courts, other than for jury service.
Id. at 218.

CONCLUSION
¶ 21. Judge Fowlkes's actions constituted willful misconduct prejudicial to the administration of justice which brought the judicial office into disrepute. The facts of this case, the Gibson factors, relevant case law, and our standard of review lead us to the conclusion that the Commission's recommendation is insufficient, inasmuch as this is not Judge Fowlkes's maiden voyage to the Commission for the aforementioned conduct. This Court finds that the appropriate sanctions against Judge Fowlkes are a public reprimand, a thirty-day suspension from office without pay, and assessment of the costs of this proceeding in the amount of $100. The reprimand shall be read in open court on the first day of the next term of the Circuit Court of Monroe County, with Judge Fowlkes present. The assessment is to be paid in full within thirty days of the date of the decision of this Court.
¶ 22. JUDGE ROBERT EARL FOWLKES, JUSTICE COURT JUDGE FOR MONROE COUNTY, SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT BY THE PRESIDING JUDGE OF THE MONROE COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT AFTER THIS DECISION BECOMES FINAL; IS SUSPENDED FOR THIRTY (30) DAYS WITHOUT PAY FROM AND AFTER THE DATE OF ISSUANCE OF THE MANDATE IN THIS CASE; AND, IS ASSESSED COSTS IN THE AMOUNT OF $100.00.
WALLER, P.J., CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, P.J. AND EASLEY, J., NOT PARTICIPATING.