RANDOLPH, Justice, for the Court.
¶ 1. This matter is before the Court on the recommendation of the Mississippi Commission on Judicial Performance (“Commission”) seeking a public reprimand of Justice Court Judge Charles L. Vess of the South District of Adams County, as well as payment of a fine and the costs of these proceedings. The Court so finds.

PROCEEDINGS BEFORE THE COMMISSION

¶ 2. In July 2008, the Commission filed a Formal Complaint charging Judge Vess with willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute in violation of the Code of Judicial Conduct. Such conduct is actionable *488 pursuant to the provisions of Article 6, Section 177A of the Mississippi Constitution of 1890. The Formal Complaint charged violations of Canons 1, 2A, 2B, 3B(2), 3B(4), and 3B(7) of the Mississippi Code of Judicial Conduct. In his answer, Judge Vess admitted misconduct and violations of the Code. However, he asserted that his actions were without malice, not willful, and not in violation of Article 6, Section 177A. In response to allegations of engaging in ex parte communications, he offered that he did not initiate the conversations and he did not allow anyone to speak about the facts of the case. He averred mitigating circumstances and proposed a lesser sanction, a private reprimand and a fine of not more than $1,000.
¶ 3. In October 2008, counsel for the Commission and Judge Vess filed an Agreed Statement of Facts and Proposed Recommendation (“Agreed Statement”) which was submitted in lieu of a Commission hearing. The Agreed Statement was adopted unanimously by the Commission at its next meeting.

AGREED FACTS

¶ 4. In September 2007, Glennease Scott was arrested for disturbing the peace of Candi Bernard. After the arrest, Scott was hospitalized and was unable to attend her initial appearance at the Adams County Justice Court on or about September 24. Scott’s mother appeared in court to inform Judge Vess of Scott’s hospitalization. Judge Vess entered a plea of not guilty for Scott and set her court date for October 9, 2007. On that date, Judge Vess presided over Scott’s case. With Bernard and her family in attendance, Judge Vess found Scott guilty of disturbing the peace. After Bernard was released from the courtroom, Judge Vess set aside his ruling upon the motion of the county prosecutor, requiring Scott to attend five hours of anger management training and complete one year of good behavior. During the course of the proceeding, Judge Vess indicated that he had spoken with Bernard and her family prior to the hearing.
¶ 5. At the same hearing, Judge Vess, without providing notice or allowing Scott to secure counsel, advised Scott that the court had another matter to address, relating to a 1997 criminal case. In that case, Scott had been found guilty of simple assault, and was ordered to serve jail time and to pay a fine, costs, and restitution for unpaid medical bills. The total amount was not ascertainable at the time of sentence; thus, the order was incomplete. At the same hearing on October 9, 2007, Judge Vess gave Scott a notice of contempt and told her to pay the delinquent amounts by October 17, 2007. Failing that, she was to appear for a hearing before Judge Vess on that date. Afterward, Scott set up a payment plan with the collection agency employed by the county to collect delinquent fines. However, Judge Vess rejected the plan and ordered Scott to pay the full amount.
¶ 6. Following the October 9 hearing, news of Scott’s court appearance appeared in a Natchez newspaper. It published that Scott had been found guilty of disturbing the peace, with no mention that the sentence had been set aside. Scott went to Judge Vess and spoke to him ex parte about the newspaper article. Judge Vess told her that “she should be glad he did not give her jail time because she had brought people into his courtroom that he did not care for.” Judge Vess acknowledges that his comments were not conveyed in a polite manner. Judge Vess also told Scott that he would contact the newspaper about the error. Later, the paper printed a corrected story.
¶ 7. Judge Vess and Scott had another ex parte conversation when she asked him *489 to inform her employer of the verdict. The judge complied with this request by drafting a handwritten note and giving it to Scott. Judge Vess said he did this in part because he was intimidated by Scott.

ANALYSIS

¶ 8. Our standard of review is de novo as follows:
“We conduct a de novo review of judicial misconduct proceedings, giving great deference to the findings, based on clear and convincing evidence, of the recommendations of the Mississippi Commission on Judicial Performance. While we do give great deference to the Commission’s findings, we are also charged to render an independent judgment.”
Miss. Comm’n on Judicial Performance v. Westfaul, 962 So.2d 555 (Miss.2007) (quoting Miss. Comm’n on Judicial Performance v. Sanford, 941 So.2d 209, 212 (Miss.2006)).
I. Whether Judge Vess’s conduct violates Article 6, Section 177A of the Mississippi Constitution of 1890, as amended.
¶ 9. The Commission found by clear and convincing evidence that Judge Vess had violated Canons 1, 2A, 2B, 3B(2), 3(B)4, and 3(B)7 of the Code of Judicial Conduct. The Commission also found by clear and convincing evidence that Judge Vess’s conduct was willful, as well as prejudicial to the administration of justice, bringing the judicial office into disrepute. Thus, the Commission found the judge’s conduct to be in violation of Article 6, Section 177A of the Mississippi Constitution of 1890, as amended.
¶ 10. This Court has defined the term “willful misconduct” to include “any knowing misuse of the office, whatever the motive.” In re Anderson, 412 So.2d 743, 745 (Miss.1982) (quoting In re Nowell, 293 N.C. 235, 237 S.E.2d 246, 255 (1977)). By permitting ex parte communications, Judge Vess knowingly misused his office. His motivations (helping Scott by writing a note to her employer and by interceding to correct the local court blotter) are irrelevant to a finding of willful misconduct in office.[1]
¶ 11. This Court has explained that the term “conduct prejudicial to the administration of justice that brings the judicial office into disrepute” includes, by necessity, all willful misconduct. Id. However, such conduct may also include behavior brought about because of negligence or ignorance. Id.
¶ 12. By his own admission, Judge Vess engaged in ex parte communications with Bernard and her family. He later admitted to having ex parte communications with Scott and her mother. He also acknowledges that: (1) it was improper to allow someone other than the defendant or her attorney to enter a plea; (2) he should act with courtesy toward all parties; (3) writing notes for a party creates an appearance of impropriety as it could be seen as lending the prestige of his judicial office to advance the private interests of another; and (4) it was improper to find Scott in contempt and order her to pay restitution based on his prior issuance of an incomplete order.
¶ 13. Further, Judge Vess admits that his conduct violated the Mississippi Code of Judicial Conduct, particularly: Canon 1 (charging judges to establish, maintain, and enforce high standards of conduct to uphold the integrity of the judiciary); Can *490 on 2A (charging judges to act at all times in a manner that promotes public confidence 'in the integrity and impartiality of the judiciary); Canon 2B (charging judges to avoid lending the prestige of their office to advance the private interests of others); Canon 3B(2) (charging judges to be faithful to the law and not be swayed by fear of criticism); Canon 3B(4) (charging judges to be patient, dignified, and courteous to litigants); and Canon 3B(7) (charging judges not to permit ex parte communications other than those expressly excepted).
' ¶ 14. Judge Vess accepted the Commission’s recommended sanctions. He acknowledges that he violated several canons of the Code of Judicial Conduct and that his actions constituted willful misconduct prejudicial to the administration of justice, bringing his judicial office into disrepute. We accept the Commission’s findings and find that Judge Vess’s misconduct was willful and prejudicial to the administration of justice, and that it brought the judicial office into disrepute.
II. Whether the proposed sanctions should be ordered.
¶ 15. The sanctions agreed upon by the Commission and Judge Vess ai'e a public reprimand, payment of a fíne of $2,000, and payment of the cost of these proceedings in the amount of $100. Article 6, Section 177A of the Mississippi Constitution of 1890 grants this Court the power, upon recommendation of the Commission, to order the removal, suspension, fine, public censure or reprimand of any judge in Mississippi. Miss. Const, art. 6, § 177A. The sanctions imposed should be consistent with those in other cases and “ought [to] fit the offense.” In re Inquiry Concerning Bailey, 541 So.2d 1036, 1039 (Miss.1989). A six-factor analysis is used “generally to the determination of all sanctions in judicial misconduct proceedings.” Miss. Comm’n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004). The Gibson factors are examined in turn.

1. The length and character of the judge’s public service.

¶ 16. Judge Vess has served his district as a justice court judge for seventeen years. He is a long-term community leader and volunteer. He has served as president of the Natchez Historical Society and as a board member of the American Red Cross. He contributes his time to other local organizations, including the City Cemetery Association, Neighborhood Watch, and the Guardian Shelter, a home for battered women. He serves as an instructor in domestic violence prevention and established a library at the Natchez City Jail. See Miss. Comm’n on Judicial Performance v. Vess, 692 So.2d 80, 82 (Miss.1997) (“Vess II”).

2. Whether there is any prior case laiv on point.

¶ 17. In addition to the cases cited above and below, several cases are listed here for the purpose of determining whether the recommended sanctions fit the offense and are consistent with previous holdings of this Court. The cases involve justice court judges accused of misconduct including ex parte communications, abuse of process, procedural errors, improper demeanor, lack of impartiality, and lending the prestige of office to advance the private interests of others.
¶ 18. In Mississippi Commission on Judicial Performance v. Fowlkes, 967 So.2d 12 (Miss.2007), this Court found that the recommended sanctions were insufficient, and ordered a public reprimand, a thirty-day suspension without pay, and the payment of costs in the amount of $100. Id. at 16. The misconduct was similar to that of Judge Vess, in that Judge Fowlkes engaged in ex parte communication and *491 previously had been disciplined for the same violation. Id. at 15. The Court took note of the fact that Judge Fowlkes had, just a year earlier, acknowledged the impropriety of ex parte communications. Id. In Judge Vess’s prior misconduct proceedings, as detailed below, he made a similar acknowledgment and now stands accused of the same misconduct. Vess II, 692 So.2d at 83. However, we note Judge Fowlkes’s misconduct constituted a pattern which continued shortly after he acknowledged his wrongdoing. For more than ten years, Judge Vess has not been subject to any disciplinary proceedings.
¶ 19. In Mississippi Commission on Judicial Performance v. Britton, 936 So.2d 898 (Miss.2006), this Court found that the recommended sanctions were insufficient and ordered a public reprimand, a thirty-day suspension, and the payment of costs in the amount of $1,118.37. Id. at 907-08. Judge Britton’s misconduct also involved ex parte communications and constituted a pattern of misconduct. Id. at 907. In increasing the sanctions, the Court noted that Judge Britton had been before the Commission six times in a six-year period and that, on each occasion, the judge had “claimed that the circumstances were different and he was not aware that what he did was a violation of the prohibition against ex parte communications.” Id. Judge Vess has not engaged in a pattern of misconduct comparable to that of Judge Fowlkes and Judge Britton. Because of the lack of a pattern of misconduct, Judge Vess’s sanctions may appear to be harsh by comparison to Fowlkes and Britton. It should be noted, however, that Judge Fowlkes and Judge Britton received thirty-day suspensions, while Judge Vess, on his own request, is effectively being allowed work without pay for one month. Also, Judge Britton was required to pay costs of more than $1,100, compared to $100. Id. at 907-08.
¶ 20. In Mississippi Commission on Judicial Performance v. Willard, 788 So.2d 736 (Miss.2001), this Court affirmed the recommended sanctions, ordering Judge Willard to be removed from office and to pay all costs of the proceedings in the amount of $9,084.66. Id. at 738. Twenty-four counts of misconduct, most of which involved ex parte communications, were proven by clear and convincing evidence. Id. The other counts included: dismissing charges on his own motion, conducting a hearing in which the defendant had not received notice, using the criminal process to collect a civil debt, issuing an arrest warrant for someone who owed no fines, conducting a contempt hearing in which no affidavit or warrant had been issued, issuing a citation of contempt without notice or advisement of rights, convicting a defendant without notice or hearing, sentencing a justice court clerk for contempt without notice, and refusing to allow representation by counsel. Id. at 738-41. The Court stated that, despite its efforts, it was impossible to find another case in which the misconduct was comparable to “Willard’s continuous pattern of egregious behavior.” Id. at 745. Judge Vess’s conduct, by comparison, was not egregious, did not constitute a pattern, and involved the litigants in only one case.
¶ 21. In Mississippi Commission on Judicial Performance v. Roberts, 952 So.2d 934 (Miss.2007), this Court affirmed the recommended sanctions, ordering a public reprimand, a thirty-day suspension without pay, and the payment of a fine in the amount of $1,500 and costs in the amount of $100. Id. at 935. As Judge Vess did here, Judge Roberts filed a joint motion along with the Commission. Id. at 939. Judge Roberts admitted the following: (1) When a husband filed domestic violence charges against his wife, the judge stated that the charge was ridiculous. Af *492 terward, when the wife brought trespass charges, the judge remanded the charge to the file, did not allow the husband to present any evidence and threatened the husband with arrest if he ever appeared in court. Id. (2) Judge Roberts released a murder suspect on bond, but after an unfavorable article appeared in the local paper, he had the suspect re-arrested and held without bond. Id. at 935-36.(3) Judge Roberts held a bond revocation hearing without an affidavit or petition being filed. He then recused himself, but later heard the matter without regard to the recusal. Id. at 936.(4) After finding a defendant guilty of careless driving, Judge Roberts went beyond his authority and ordered the defendant not to drive in the county for two years. Id. at 937.(5) Judge Roberts failed to respond to letters from an attorney inquiring about a trial date. The judge then set the trial date without informing the defendant or the attorney. When neither appeared at the trial, he convicted the defendant in absentia and issued an arrest warrant for the attorney. Id. In affirming the sanctions, the court noted that Judge Roberts was in his first term, had never been subject to any disciplinary procedures and had admitted his wrongdoing in the joint motion. Id. at 942. Judge Vess’s procedural violations do not compare in number or severity to those of Judge Roberts. However, it should be noted that Judge Vess is now in his fifth term and has been disciplined by this Court on two previous occasions. Vess II, 692 So.2d at 85; Miss. Comm’n on Judicial Performance v. Vess, 637 So.2d 882 (Miss.1994) (Vess I). Also, Judge Roberts was fined and suspended, where Judge Vess is only being fined.
¶ 22. In Mississippi Commission on Judicial Performance v. Spencer, 725 So.2d 171 (Miss.1998), this Court affirmed the Commission’s recommendation, ordering Judge Spencer to be removed from office and to pay the all costs of the proceedings in the amount of $9,452.92. Id. at 183. Twenty-five counts of misconduct, ten of which involved ex parte communications, were proven by clear and convincing evidence. Id. at 177. The other counts included: improper demeanor, lack of impartiality, failure to perform duties, and sexual misconduct. Id. The Commission found that Spencer had failed to dispose of 334 cases, and had recused himself in forty-four others (primarily because of ex parte communications). Id. at 178-80. The Court stated that Spencer had “demonstrated outrageous, erratic conduct and hostile demeanor toward those exposed to him.” Id. at 178. Judge Vess admits that he could have been more polite to Scott. However, Vess’s improper demeanor does not compare to that displayed by Judge Spencer toward numerous people during his tenure as a judge. Id. at 173. Further, Judge Vess is not accused of sexual misconduct or failure to perform his judicial duties.
¶ 23. Judge Vess acknowledges that his actions (writing a note for Scott and interceding for her to correct a newspaper article) give the impression that he is not impartial and bring his office into disrepute. As noted elsewhere, Judge Vess’s motivations are relevant; he was attempting to help Scott and not seeking any advantage for himself. In light of this fact and in comparison with the cases above, we find that the recommended sanctions fit the offense and are consistent with this Court’s previous holdings.

8. The magnitude of the offense and the harm suffered.

¶ 24. Scott was affected by Judge Vess’s conduct by: (1) having a plea entered on her behalf without being present or being afforded the opportunity of a rescheduled appearance; (2) not receiving *493 notice and an opportunity to secure counsel before being given a notice of contempt; and (3) being required to pay a judgment in full on an incomplete order.
¶ 25. The public perception of the judiciary was harmed by Judge Vess’s misconduct. By engaging in ex parte communications with both parties and by writing a note to Scott’s employer, Judge Vess gave the appearance of impropriety and of lending the prestige of his office to advance the private interests of others. Avoiding the appearance of impropriety is particularly important at the justice-court level because of the harmful effect of such an appearance on the public’s impression of the entire judiciary. This Court has stated, “[ojfficial integrity of our Justice Court Judges is vitally important, for it is on that level that many citizens have their only experience with the judiciary.” In re Inquiry Concerning Garner, 466 So.2d 884, 887 (Miss.1985).

Ip. Whether the misconduct is an isolated incident or evidences a pattern of misconduct.

¶ 26. Judge Vess was the subject of disciplinary proceedings on two occasions early in his tenure. Vess II, 692 So.2d at 80; Vess I, 637 So.2d at 882. In Vess I, this Court affirmed the recommendation of a public reprimand and a fine of $100 for accepting restitution payments from a litigant on behalf of a victim. Vess I, 637 So.2d at 882. In Vess II, an action involving ex parte communications, this Court affirmed the recommended sanctions of a public reprimand and costs in the amount of $1,173.45. Vess II, 692 So.2d at 81. In Vess II, Judge Vess admitted that he had engaged in ex parte communications with a defendant and several others involved in a criminal case. Id. at 84. This conduct occurred more than a decade ago during Judge Vess’s first term; thus, Judge Vess’s actions cannot be said to be part of a pattern of misconduct. This lack of a pattern is properly listed below among the mitigating factors.

5. Whether moral turpitude was involved.

¶ 27. The Joint Memorandum Brief states simply, “No moral turpitude was involved.” We agree. This Court has stated that “Moral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such actions which bring the judiciary into disrepute.” Gibson, 883 So.2d at 1158 n. 2. In Mississippi Commission on Judicial Performance v. Gordon, 955 So.2d 300 (Miss.2007), this Court described moral turpitude analysis as follows:
The bottom line of this element is that we must determine whether a judge’s conduct crosses the line from simple negligence or mistake, to willful conduct which takes advantage of a judge’s position for greed or other inappropriate motives. If the conduct willfully subverts justice, more punishment is warranted.
Id. at 305.
¶ 28. In Mississippi Commission on Judicial Performance v. Carr, 990 So.2d 763 (Miss.2008), this Court reviewed its recent holdings in which moral turpitude was found to be involved, as follows:
Gordon, 955 So.2d at 305-06 (fourteen instances of “ticket-fixing”); Sanford, 941 So.2d at 216-18 (at request of judge, sheriff informed arresting officer in DUI ease not to appear at a court hearing so that judge could dismiss case for failure to prosecute, and the case was dismissed); Miss. Comm’n on Judicial Performance v. Britton, 936 So.2d 898, 906 (Miss.2006) (six complaints ranging *494 from ex parte communications with parties to setting aside judgment entered by another judge); Miss. Comm’n on Judicial Performance v. Cowart, 936, So.2d 343, 350 (Miss.2006) (three instances involving ex parte communications, resulting in judge remanding traffic tickets to files). ■
Id. at 769. In Carr, a judge was accused of ex parte communications with a woman who had taken certain items for safekeeping to prevent them from being stolen. Id. at 765. Judge Carr threatened her with prosecution if she did not return the items by a certain date. Id. When she asked for additional time, Judge Carr granted it. Id. However, before the extended time elapsed, he called her and told her that a warrant had been issued for her arrest, when in fact no warrant had been issued. Id. The Can• Court reversed the finding of the Commission by holding that Judge Carr’s misconduct involved moral turpitude, because it was similarly egregious to the conduct in the cases listed above. Id. at 770.
¶ 29. Judge Vess’s actions are not of the egregious character of the misconduct in Can, Gordon, Sanford, Britton, and Cowart. His actions do not reach the level required by the standard set in Gordon. Thus, we find that moral turpitude was not involved.
6. The presence or absence of mitigating or aggravating factors.
¶ 30. Aggravating factors include the following: (1) Judge Vess has been disciplined previously by this Court in a very similar case. Vess II, 692 So.2d at 85. In Vess II, the commission found that Vess had spoken ex parte with a criminal defendant, her mother, the arresting officer, and the prosecutor. Id. at 84. Except for the absence of a hearing this time, this section of Vess II could be repeated verbatim today:
Initially Judge Vess thought that his conduct did not constitute ex parte communications, because he believed that it was not improper to talk with parties in a case so long as they did not discuss the facts or the “meat of the case.” However, during the hearing, the judge testified that he now realized that his contacts with [the defendant] were improper but that he had no malicious intent or intent to discredit his office. The judge also admitted that such communications at least gave an appearance of impropriety, and he stated at the end of his testimony that he now understood that ex parte communications are not limited to discussing the facts of a case. Mitigating evidence was presented on behalf of Judge Vess showing that he was enthusiastic and innovative in his work and had initiated new programs and improvements with the justice court.
Id. at 83.(2) Judge Vess’s misconduct was willful. (3) Judge Vess’s actions reflect adversely on the propriety and impartiality of the judiciary.
¶ 31. Mitigating factors include the following: (1) Judge Vess acknowledged his inappropriate conduct by entering into the Agreed Statement of Facts and Proposed Recommendation. (2) Judge Vess agreed to be assessed a $2,000 fine in lieu of suspension without pay. The Commission agreed to this because of Judge Vess’s concerns about his case load and the effect of a thirty-day suspension on the efficiency of the Justice Court system in Adams County. A fine of $2,000 is effectively a forfeiture of gross income for one month while Judge Vess continues his judicial duties. (3) The Commission acknowledges that in writing a note for Scott and in discussing the newspaper report with her, Judge Vess was simply trying to help. *495 The Joint Memorandum Brief states that Judge Vess “did not intend to intimidate or interfere with the legal process in any way, but his actions ... ultimately creat[ed] the appearance of impropriety.” (4) Judge Vess assured the Commission that he had taken steps to ensure that such misconduct would not recur.
¶ 32. The Commission and Judge Vess agreed on the recommendation for sanctions. Based on the factors discussed above, the sanctions proposed by the Commission are commensurate with the violation.

CONCLUSION

¶ 33. We grant the parties’ joint motion for approval of the Commission’s recommendation and order Justice Court Judge Charles L. Vess of the South District of Adams County to be publicly reprimanded and assessed a fine in the amount of $2,000 and costs in the amount of $100. Judge Vess’s public reprimand shall be read in open court on the first day of the next term of the Circuit Court of Adams County in which a jury venire is present, with Judge Vess present and standing before the presiding judge, who shall read the reprimand in open court.
¶ 34. JUDGE CHARLES L. VESS, JUSTICE COURT JUDGE FOR THE SOUTH DISTRICT OF ADAMS COUNTY, SHALL BE PUBLICLY REPRIMANDED IN OPEN COURT WHEN THE VENIRE PANEL MEETS, BY THE PRESIDING JUDGE OF THE ADAMS COUNTY CIRCUIT COURT, ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT AFTER THIS DECISION BECOMES FINAL, AND IS ASSESSED A FINE IN THE AMOUNT OF $2,000.00 AND COSTS OF THESE PROCEEDINGS IN THE AMOUNT OF $100.00.
WALLER, C.J., CARLSON, P.J., DICKINSON, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY.

. However, as seen below, his motivation may be a mitigating factor in determining the proper sanction.