CARLSON, Presiding Justice,
 

 for the Court:
 

 ¶ 1. On August 6, 2009, the Mississippi Commission on Judicial Performance (Commission) filed a Formal Complaint charging Lincoln County Justice Court Judge Ralph Boone with willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, thus causing such alleged conduct to be actionable pursuant to the provisions of Section 177A of the Mississippi Constitution of 1890, as amended. Judge Boone filed an answer to the formal complaint on September 8, 2009, denying the claims. On April 8, 2010, a three-person committee appointed by the chair of the Commission conducted a hearing in this matter, and at the conclusion thereof, the committee took this matter under advisement. Counsel for the Commission filed Proposed Findings of Fact and Conclusions of Law on May 13, 2010, and Judge Boone filed his Proposed Findings of Fact and Conclusions of Law on June 1, 2010. The committee filed its Findings of Fact and Recommendation on June 11, 2010, in which the committee unanimously recommended to the Commission that Judge Boone be removed from his judicial office and assessed the costs of all proceedings.
 

 ¶ 2. On July 6, 2010, the Commission filed with this Court its Findings of Fact, Conclusions of Law, and Recommendation. Specifically, the Commission found that Judge Boone’s conduct violated Canons 1, 2A, 2B, 3B(2), 3B(4), and 4A of the Code of Judicial Conduct, and that such actions constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute pursuant to Article 6, Section 177A, of the Mississippi Constitution of 1890, as amended. The Commission recommended to the Court that Judge Boone be removed from the office of justice court judge and that he be assessed the costs of all proceedings before the Commission, in the amount of $1,907.05. One of the several allegations of judicial misconduct lodged against Judge Boone was that he had made sexual advances toward a female litigant. As will become apparent,
 
 infra,
 
 there is not a consensus among the justices of this Court on whether the facts surrounding this alleged sexual conduct with a female litigant have been established by clear and convincing evidence; thus, we are unable to adopt the Commission’s recommendation that Judge Boone be removed from office. We do find that Judge Boone’s conduct violated various canons of our Code of Judicial Conduct, and we impose a ninety-day suspension without pay, a public reprimand, and assessment of costs in the amount of $1,907.05.
 

 FACTS AND PROCEEDINGS BEFORE THE COMMISSION
 

 ¶ 3. In its formal complaint, the Commission alleged,
 
 inter alia,
 
 that on the morning of April 15, 2009, Judge Boone presided over the trial of defendant Christina Twaddle. Judge Boone imposed a $239 fine, to be paid no later than 5:00 p.m. the same day. The formal complaint further asserted:
 

 
 *175
 
 Around noon on April 15, 2009, [Judge Boone] spotted Twaddle at a local gasoline station and inquired as to whether he knew her. Twaddle told him she had appeared before him that very morning in court. He then asked if she would ride with him in his automobile to discuss payment of the fine. Twaddle agreed and left the gasoline station with [Judge Boone].
 

 During the time [Judge Boone] and Twaddle were in his vehicle, [Judge Boone] touched Twaddle on the breast and crotch area. [Judge Boone] told Twaddle that he would “fix her fíne” in exchange for a sexual act. [Judge Boone] drove Twaddle to a local business and asked that she meet him around 3 p.m. [Judge Boone] and Twaddle exchanged telephone numbers and [Judge Boone] left. [Judge Boone] called Twaddle on numerous occasions on the afternoon of April 15, 2009.
 

 On the afternoon of April 15, 2009, Twaddle paid $139.00 to the justice court clerk of Lincoln County, Mississippi after [Judge Boone]
 
 sua sponte
 
 reduced the amount owed by $100.00.
 

 ¶ 4. On these alleged facts, the Commission charged Judge Boone with violations of Canons 1, 2A, 2B, 3B(2), 3B(4), and 4A of the Mississippi Code of Judicial Conduct. The Commission further asserted that Judge Boone’s alleged judicial misconduct was actionable pursuant to the provisions of Section 177A of the Mississippi Constitution of 1890, as amended. The Commission complied with the provisions of Mississippi Commission on Judicial Performance Rule 6C concerning proper notice to Judge Boone, as well as his right to respond pursuant to Rule 6D.
 

 ¶ 5. On August 14, 2009, Judge Henry L. Lackey, Chair of the Commission, entered an order appointing a three-person committee, consisting of certain Commission members, to conduct a formal, evidentiary hearing concerning the allegations contained in the formal complaint. Thereafter, Judge Boone filed an answer to the formal complaint, generally denying the allegations in the complaint. Upon the filing of Judge Boone’s response, Judge Lackey entered a scheduling order providing various deadlines for discovery, the filing of motions, as well as a hearing date. On March 16, 2010, Judge H. David Clark, the new chair of the Commission, entered an amended order appointing a three-person committee to conduct an evidentiary hearing on the formal complaint.
 

 ¶ 6. The formal hearing was held on April , 8, 2010, Judge Lee J. Howard presiding. Both the Commission and Judge Boone were represented by counsel. In the Commission’s case-in-chief, the following persons testified: (1) Lincoln County Justice Court Judge Ralph Boone; (2) Pike County Justice Court Judge Aubrey P. Rimes; (3) Raymond O. Boutwell, Jr., the attorney who had represented Christina Twaddle at her public drunkenness hearing before Judge Boone; (4) Lincoln County Deputy Justice Court Clerk Melanie Green; (5) Mikell Buckley, Chief Investigator for the Mississippi Commission on Judicial Performance; (6) Christina Twaddle, the complaining witness; (7) Megel Jackson, Twaddle’s godson; and (8) Truett Simmons, Investigator for the District Attorney’s Office in the Fourteenth Circuit Court District, of which Lincoln County is a part. Nolan Jones, Assistant Chief of Police for the City of Brookhaven, was the only witness to testify in Judge Boone’s case-in-chief.
 
 [1]
 
 Following the hearing, the committee, on a unanimous vote, entered its fourteen-page findings of fact and recommendation for
 
 *176
 
 the Commission’s consideration. Thereafter, the Commission entered its fifteen-page findings of fact, conclusions of law and recommendation, stating,
 
 inter alia,
 
 that “the Commission, based upon clear and convincing evidence, adopts the Committee findings.... ” The Commission’s recommendation stated in pertinent part:
 

 It is a sad day in the judiciary when judges, who have accepted an oath to uphold the law, engage in such conduct as witnessed in this case. [Judge Boonej’s actions have destroyed any positive perception Twaddle or her family may ever have of the judiciary and such behavior cannot be tolerated. Therefore, the Commission by clear and convincing evidence, concludes that [Judge Boone’s] conduct in this case has violated Section 177A of the Mississippi Constitution of 1890, as amended, and that said conduct constitutes willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. The panel finds that the only sanction that will restore confidence in the Lincoln County Justice Court is to remove [Judge Boone] from the office of Justice Court Judge, and to assess all costs of this proceedings [sic] in the sum of $1,907.05 against [Judge Boone].
 

 ¶ 7. These recommendations are now before this Court.
 

 DISCUSSION
 

 ¶ 8. Our state constitution states that this Court has authority to sanction a judge “[o]n recommendation of the commission on judicial performance....” Miss. Const, art. 6, § 177A (1890). This Court’s first opportunity to address this constitutional provision, which was passed by a concurrent resolution of the Legislature in 1979, and ratified by the electorate on November 6, 1979, was in
 
 In re Removal of Lloyd W. Anderson, Justice Court Judge,
 
 412 So.2d 743 (Miss.1982). Although we will return to
 
 Anderson infra
 
 for a more detailed discussion on our mandated responsibilities in considering cases of alleged judicial misconduct, suffice it to state here that this Court stated, for the first time, that in cases coming to us from the Mississippi Commission on Judicial Performance, the Court, in making
 
 a
 
 “final determination of the appropriate action to be taken in each case,” would “conduct an independent inquiry of the record” and in doing so, this Court would “accord careful consideration [of] the findings of fact and recommendations of the Commission, or its committee, which has had the opportunity to observe the demeanor of the witnesses.”
 
 Id.
 
 at 746. But somewhere along the way,
 
 post-Anderson,
 
 this Court has strayed from the wisdom of
 
 Anderson
 
 in considering cases coming to us from the Commission. We have even gotten to the point of stating that when acting on a recommendation from the Commission, we will conduct a de novo review of the Commission’s proceedings, “while affording deference to the Commission’s recommendations when the Commission’s findings are based on clear and convincing evidence.”
 
 Miss. Comm’n on Judicial Performance v. Thompson,
 
 972 So.2d 582,
 
 585
 
 (Miss.2008) (citing
 
 Miss. Comm’n on Judicial Performance v. Cole,
 
 932 So.2d 9, 10 (Miss. 2006) (other citations omitted)). On the other hand, we have stated that, while this Court does afford considerable deference to the findings of the Commission, “ ‘we
 
 *177
 
 are also charged to render an independent judgment.’ ”
 
 Thompson,
 
 972 So.2d at 585 (quoting
 
 Miss. Comm’n on Judicial Performance v. Gibson,
 
 883 So.2d 1155, 1156 (Miss.2004) (other citations omitted)). We stated in
 
 Mississippi Commission on Judicial Performance v. Hartzog,
 
 904 So.2d 981, 984 (Miss.2004), that we give
 
 “great deference to the findings,
 
 based on clear and convincing evidence,.
 
 and recommendations
 
 of the Mississippi Commission on Judicial Performance.” (Emphasis added.)
 
 See also Miss. Comm’n on Judicial Performance v. Peyton,
 
 645 So.2d 954, 956 (Miss.1994);
 
 Miss. Comm’n on Judicial Performance v. Gunn,
 
 614 So.2d 387, 389 (Miss.1993). Finally, unquestionably, we have stated that, in considering the Commission’s recommendations in judicial performance cases, we are the “trier of fact” inasmuch as this Court has “the sole power to impose sanctions in judicial misconduct cases.”
 
 Hartzog,
 
 904 So.2d at 984 (citing
 
 Peyton,
 
 645 So.2d at 956.)
 

 ¶ 9. Additionally, we also have stated that, while we are to look anew at the facts found by the Commission, as well as the Commission’s recommendations as to sanctions, we are permitted to afford deference to the Commission and its recommendations when its findings are undergirded by clear and convincing evidence. In
 
 Mississippi Commission on Judicial Performance v. Carr,
 
 990 So.2d 763, 765-66 (Miss.2008), we stated that, “ ‘[wjhile it is true that this Court is the trier of fact in judicial misconduct proceedings and may impose additional sanctions, it nonetheless gives great weight to the findings of the Commission which has had the opportunity to observe the demeanor of the witnesses.’ ” (quoting
 
 Miss. Comm’n on Judicial Performance v. Sutton,
 
 985 So.2d 322, 326 (Miss.2008)).
 
 See also In re Garner,
 
 466 So.2d 884, 885 (Miss.1985).
 

 ¶ 10. In a nutshell, when a formal complaint is filed against a judge, a three-member committee will be appointed by the Commission to conduct an evidentiary hearing on the formal complaint. At this hearing, the Commission’s representatives and the respondent-judge have the opportunity to call witnesses to give sworn testimony. Exhibits also may be received into evidence. The committee then submits to the full Commission written findings of fact and its recommendation. The Commission is free to adopt, in whole or in part, or to modify or reject, the committee’s findings and recommendation. Eventually, the Commission submits its findings of fact, conclusions of law, and recommendation to this Court, which ultimately renders a decision. Throughout this entire process, which involves a three-person committee, a seven-person Commission, and a nine-justice Mississippi Supreme Court, the three committee members,
 
 and only
 
 the three committee members, have the opportunity, not only- to hear the testimony of the witnesses, but also to observe the demeanor of the witnesses as they testify.
 

 ¶ 11. With this being said, we state today that we are returning to our mandated review as set out in
 
 Anderson
 
 and as discussed in detail
 
 infra.
 
 Thus, any language contrary to
 
 Anderson
 
 adopted by this Court in other cases is expressly overruled. We now return to the facts and Commission proceedings in today’s case.
 

 I. WHETHER JUDGE BOONE’S CONDUCT CONSTITUTES MISCONDUCT IN VIOLATION OF CANONS 1, 2A, 2B, 3B(2), 3B(4), AND 4A OF THE MISSISSIPPI CODE OF JUDICIAL CONDUCT, THUS CAUSING THIS MATTER TO BE ACTIONABLE UNDER SECTION 177A OF THE MISSISSIPPI CONSTITUTION OF 1890, AS AMENDED.
 

 ¶ 12. We set out the facts as revealed in the record as the need arises in
 
 *178
 
 our discussion. We begin, however, with the Commission’s findings of fact. These findings of fact are critical to our determination here today, and are thus set out verbatim:
 
 [2]
 

 [Judge Boone], in his official capacity as Justice Court Judge, on or about the morning of April 15, 2009, presided over the trial of defendant, Christina Twaddle regarding a charge of public drunk in
 
 State of Mississippi v. Christian (sic) Twaddle,
 
 Docket 278, Page 582, Lincoln County Justice Court. After hearing testimony, [Judge Boone] found Twaddle guilty and imposed a fine of $100.00 plus costs of $139.00; a total of $239.00. [Judge Boone] told Twaddle and her attorney, Raymond O. Boutwell, Jr., that the sum must be paid no later than 5 p.m. that same day.
 

 Around noon on April 15, 2009, shortly after Twaddle’s trial, [Judge Boone] saw Twaddle at a local gasoline station and inquired as to whether he knew her. Twaddle told him she had appeared before him that morning in court. He then asked if she would ride with him in his automobile to discuss payment of the fine. Twaddle, thinking she could work out payment arrangements, agreed and left the gasoline station with [Judge Boone]. [Judge Boone] now admits that " he and Twaddle left the gasoline station together in his vehicle and he testified that Twaddle stated to him at the Murphy Oil station that “I thank you for reducing my fine.” At the Commission hearing Judge Boone and his clerk, Melanie Green, testified that the reducing of the fine occurred in open court. The recorded telephone conversation cited in [these findings] refutes both their testimony. ■
 

 After being served with the Formal Complaint in this matter by the Commission investigator, Mikell Buckley on August 6, 2009, [Judge Boone] initially denied riding [with] Twaddle in his truck. At that same time he also told Buckley that “he was a Christian and that he allowed the devil to take hold of him.” He also expressed regret about the incident and that “the devil got ahold” of his tongue and “made it wicked” and that he had “never really done anything like this before,”
 
 [3]
 
 The next morning, at the request of [Judge Boone], Judge Aubrey Rimes, Justice Court Judge in Pike County, called Ms. Buckley with an admission that [Judge Boone] stated to him that he had indeed ridden with Twaddle in his vehicle and wished to straighten out his prior statement to her.
 

 During the time [Judge Boone] and Twaddle were in his vehicle, [Judge Boone] touched Twaddle on the breast and crotch area. [Judge Boone] told
 
 *179
 
 Twaddle that he would “fix her fine” in exchange for a sexual act. [Judge Boone] drove Twaddle to Rite-Aid Drug Store and asked that she meet him around 3 o’clock p.m. after he completed his afternoon docket. [Judge Boone] and Twaddle exchanged cellular telephone numbers and [Judge Boone] left. [Judge Boone] called Twaddle on numerous occasions on the afternoon of April 15, 2009 to arrange the meeting and cell phone records were obtained verifying this.
 

 Twaddle was picked up at Rite-Aid Drugs by her godson, Megel Jackson. Twaddle immediately told Jackson what had occurred during her ride with [Judge Boone]. During the Commission hearing, [Judge Boone] says that he only made “a little block” with Twaddle. Both Twaddle and Megel Jackson testified that the ride with Judge Boone lasted 15 to 20 minutes. Twaddle and Jackson then went to the law office of Raymond Boutwell and advised him of the incident regarding [Judge Boone]. Acting on the advice of counsel, Twaddle went to the Lincoln County Sheriffs Department to report the incident. While at the Sheriffs Department, Twaddle’s statement was taken and recorded by the investigator for the Lincoln County District Attorney’s Office, Truett Simmons. The interview began at 3:45 p.m. on April 15, 2009 and concluded at 4:17 p.m. the same day. A copy of the tape was introduced at the hearing in this matter. As a result of the interview, Truett Simmons filed a complaint against [Judge Boone] with the Commission.
 

 On the afternoon of April 15, 2009, Twaddle paid $139.00 to the justice court clerk of Lincoln County, Mississippi after [Judge Boone]
 
 sua sponte
 
 reduced the amount owed by $100.00.
 

 [Judge Boone] denies touching Twaddle and testified that he only took her riding because she told him that her attorney, Raymond Boutwell, was “out to get him.”
 
 [4]
 
 [Judge Boone] also testified that he reduced the fine of $100.00 from the total amount owed at the conclusion of the criminal trial in open court at the request of Assistant Police Chief, Nolan Jones.
 
 [5]
 
 [Judge Boone]’s testimony is refuted by the recorded telephone conversation
 
 [6]
 
 and by both Twaddle and her
 
 *180
 
 attorney, Boutwell. They testified that the amount Twaddle was ordered to pay as a result of her misdemeanor conviction was $239.00.
 
 [7]
 
 Also, contrary to [Judge Boone]’s testimony and that of his clerk, Melanie Green, [Judge Boone] called Twaddle during her interview with Truett Simmons at around 4 o’clock p.m. and told her that he had “fixed” her fíne and reduced the amount by $100.00.
 
 [8]
 
 Considering [Judge Boone]’s lack of truthfulness about this issue, as well as his failure to be honest with the Commission investigator when served with the Complaint, supports (sic) this Commission’s finding that [Judge Boone]’s assertions regarding what happened during the ride are not credible. Twaddle immediately reported the incident and took appropriate steps to notify the proper authorities regarding [Judge Boone]’s misconduct.
 

 ¶ 13. Based on the record in today’s case, we find that, under Section 177A of the Mississippi Constitution of 1890, as amended, Judge Boone’s actions constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, and that Judge Boone has violated Canons 1, 2A, 2B, 3B(2), 3B(4), and 4A.
 

 A. Canon 1
 

 ¶ 14. Canon 1 states:
 

 An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. The provisions of this Code should be construed and applied to further that objective.
 

 ¶ 15. The Commission found that Judge Boone had violated the “very essence” of Canon 1, because his actions diminished the public’s confidence in the judiciary.
 
 See Miss. Comm’n on Judicial Performance v. Brown,
 
 37 So.3d 14, 18-19 (Miss.2010) (violation of Canon 1 based,
 
 inter alia,
 
 on inappropriate sexual touching);
 
 Miss. Comm’n on Judicial Performance v. Spencer,
 
 725 So.2d 171, 177 (Miss.1998) (violation of Canon 1 stemming from
 
 ex parte
 
 communications).
 

 
 *181
 

 B. Canon 2A
 

 ¶ 16. Canon 2A states:
 

 A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
 

 ¶ 17. The Commission found that Judge Boone’s fondling Twaddle and his request for oral sex in return for a fine reduction violated Canon 2A. Citing the canon’s Comment, the Commission found that Judge Boone “not only created the appearance of impropriety, but actually behaved improperly by assaulting a litigant and attempting to negotiate sexual favors in exchange for [Judge Boone] ‘helping her with her fines.” The Commission concluded by finding that Judge Boone’s actions not only eroded, but “shattered,” the public’s confidence in the judiciary.
 

 ¶ 18. Without question, contradictory testimony was presented at Judge Boone’s hearing. The Commission found by clear and convincing evidence that Judge Boone had fondled Twaddle and had requested oral sex in return for reducing Twaddle’s fine. Some of the evidence presented at the hearing revealed that: (1) Judge Boone stated to Investigator Buckley that “he had allowed the devil to take hold of him” and that “the devil got ahold of his tongue and made it wicked;” (2) Judge Boone lied to Buckley about the events of April 15 when Buckley initially presented him with the Commission’s Formal Complaint; and (8) 'Twaddle immediately reported the incident to her attorney and the sheriff.
 
 See Miss. Comm’n on Judicial Performance v. Lewis,
 
 913 So.2d 266, 270-71 (Miss.2005).
 

 C. Canon 2B
 

 ¶ 19. Canon 2B states:
 

 Judges shall not allow their family, social, or other relationships to influence the judges’ judicial conduct or judgment. Judges shall not lend the prestige of their offices to advance the private interests of the judges or others; nor shall judges convey or permit others to convey the impression that they are in a special position to influence the judges. Judges shall not testify voluntarily as character witnesses.
 

 ¶ 20. Based on Judge Boone’s testimony that he had told Officer Jones that he would reduce Twaddle’s fine in order to help Jones, the Commission found that Judge Boone had violated Canon 2B. Specifically, the Commission found that Judge Boone had “lent the prestige of his office to advance the interests of [Jones] and gave Jones the impression that he was in a special position to influence [Judge Boone].”
 

 ¶ 21. We have held that conduct similar to that of Judge Boone’s violates the Code of Judicial Conduct. Regarding judges’ telephone contacts, we previously have held that it is improper for judges to have contact with those involved in cases before them.
 
 Gunn,
 
 614 So.2d at 889;
 
 Miss. Comm’n on Judicial Performance v. Willard,
 
 788 So.2d 736, 744 (Miss.2001). We even have admonished judges that it is improper
 
 “merely to listen
 
 to another person involved in pending litigation.”
 
 Willard, 788
 
 So.2d at 741 (quoting
 
 Miss. Comm’n on Judicial Performance v. Chinn,
 
 611 So.2d 849, 852 (Miss.1992)) (emphasis added);
 
 see generally
 
 Uniform Rule of Procedure for Justice Court 1.05.
 
 [9]
 
 
 *182
 
 In the case in which another person initiates the
 
 ex parte
 
 communication via telephone, we have directed judges to transfer the call to the clerk’s office.
 
 Gunn,
 
 614 So.2d at 389. We even have found that a judge’s motive, even if “to accord fairness to the litigant,” does not forgive the wrongfulness of the contact.
 
 Miss. Comm’n cm Judicial Performance v. Dodds,
 
 680 So.2d 180, 198 (Miss.1996).
 

 ¶22. The conduct in today’s case involves a telephone conversation with Officer Jones, which Jones initiated. Jones was interested in Twaddle becoming a confidential informant and had asked Judge Boone to reduce her fíne in order to gain her trust. Despite Officer Jones’s initiating the conversation and Judge Boone’s claim that he had wanted to help Officer Jones and Twaddle, Judge Boone’s actions still were highly improper. Judge Boone has a duty to follow diligently the Code of Judicial Conduct, and he failed to do so in his conversation with Officer Jones.
 

 ¶23. We take this opportunity to remind all judges and law enforcement officials of the impropriety in having
 
 any ex parte
 
 communications with each other on the merits of pending litigation. Such conduct ultimately might affect a judge’s subsequent decision in open court. Here, it is obvious that Officer Jones’s
 
 ex parte
 
 communication with Judge Boone before Twaddle’s hearing had an effect on the ultimate outcome, because Judge Boone in fact reduced the amount of Twaddle’s fíne at Jones’s request. Notably, Judge Boone’s clerk testified that the judge often reduced fines at the behest of law enforcement officials:
 

 Q: Now, do you often reduce fines for Nolan Jones?
 

 A: Not necessarily Nolan Jones. But we have in the past helped other officers, other agencies, if they’ve asked us — you know, they had someone coming through if they ask us can you maybe help this person. We do that. It’s not nothing uncommon.
 

 Q: So that happens frequently?
 

 A: Yeah, we do. We try to help when we can.
 

 Q: And would that be a reduction or a suspension of the fine?
 

 A: Yes.
 

 When asked whether “other people ask you for help,” Judge Boone responded equivocally, “No, ma’am, not — you know, it’s some people like — that will ask for court costs, but I consider them case by case.” Moreover, despite Judge Boone’s recognizing that “back in our schooling they say we can’t help with that fine,” he testified clearly that he reduced Twaddle’s fine “because [Officer Jones] asked me to do it.” Judge Boone elaborated, saying:
 

 Right before the court, Nolan Jones asked me to — he knew her. And he asked me if I could help her with the fines on it or whatever I could do to help her. I told him as far as my legal power, all I could do was the county fíne. I could not help with the state assessment or anything like that.
 

 Thus, Judge Boone admitted that he had reduced Twaddle’s fine based solely on Officer Jones’s out-of-court,
 
 ex parte
 
 request, despite his having had at least some understanding that such conduct was prohibited. In his brief to this Court, Judge Boone
 
 “categoncally denies
 
 that his conduct is in violation of [Section] 177A of the Mississippi Constitution.” (Emphasis added.) The judge has stubbornly maintained
 
 *183
 
 that his actions were entirely proper throughout the proceedings, despite his knowledge to the contrary. We emphasize here that Officer Jones should not have contacted Judge Boone. But when he did, Judge Boone should have firmly refused to discuss Twaddle’s case with Jones.
 

 D. Canon 3B(2)
 

 ¶ 24. Canon 3B(2) states:
 

 A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.
 

 ¶ 25. The Commission found that Judge Boone’s contacts with Officer Jones and his conduct toward Twaddle — specifically requesting fellatio in return for a reduced fine — violated Canon 3B(2).
 

 E. Canon 3B(I)
 

 ¶ 26. Canon 3B(4) states:
 

 Judges shall be patient, dignified, and courteous to litigants, jurors, -witnesses, lawyers, and others with whom they deal in their official capacities, and shall require similar conduct of lawyers, and of their staffs, court officials, and others subject to their discretion and control.
 

 ¶ 27. The Commission found that Judge Boone’s “indignant acts in taking a litigant for a ride in his vehicle and fondling her while asking for sexual favors in exchange for a fine reduction violates the very nature of this Canon.”
 
 See Brotm,
 
 37 So.3d at 18-19;
 
 Lewis,
 
 913 So.2d at 271. This Court has noted that most Mississippi citizens will have their only contact with our State’s judicial system through justice court. Because of this, we have held that justice court judges must scrupulously follow the Code of Judicial Conduct.
 
 Miss. Comm’n on Judicial Performance v. Sanford,
 
 941 So.2d 209, 215 (Miss.2006) (citing
 
 In re Bailey,
 
 541 So.2d 1036, 1039 (Miss.1989)).
 

 F.Canon
 
 M
 

 ¶ 28. Canon 4A states:
 

 A. Extra-judicial Activities in General. A judge shall conduct all of the judge’s extra-judicial activities so that they do not:
 

 (1) cast reasonable doubt on the judge’s capacity to act impartially as a judge;
 

 (2) demean the judicial office; or
 

 (3) interfere with the proper performance of judicial duties.
 

 ¶ 29. The Commission found that there was “an intertwining of judicial vs. extrajudicial activities” in today’s case. Further, the Commission found that Judge Boone’s actions toward Twaddle “cast[s] doubt on his ability to act as a judge, demeans the judicial office and interferes with the proper performance of his judicial duties.”
 

 ¶ 30. We return to
 
 In re Anderson,
 
 412 So.2d 743 (Miss.1982). Because the Court was addressing for the first time the provisions of Section 177A, the Court considered the experiences of Arizona, California, North Carolina, North Dakota, Oregon, Texas, and West Virginia in order to determine the solemn obligations of this Court in reviewing eases coming from the Mississippi Commission on Judicial Performance.
 
 Id.
 
 at 745-46.
 
 [10]
 
 Most, if not all, of these states, had constitutional provisions at least somewhat similar to
 
 *184
 
 our Section 177A.
 
 Id.
 
 at 745.
 
 [11]
 
 This Court also considered Mississippi Code Section 9-19-1,
 
 et seq.
 
 (Supp.1981), and Mississippi Commission on Judicial Performance Rules 8D & 10E.
 
 Id.
 
 at 744-45.
 

 ¶ 31. The Court found of significant import the California experience since that state had a constitutional provision “almost identical to our Section 177A.”
 
 Id.
 
 at 746. This Court then quoted extensively from
 
 Geiler v. Commission on Judicial Qualifications,
 
 10 Cal.3d 270, 110 CaLRptr. 201, 515 P.2d 1 (1973), and announced that the California standard should be adopted by this Court.
 
 Id.
 
 In the end, this Court pronounced the standard by which it would consider these cases:
 

 Therefore, it appears we are required to be a factfinding body, at least to some degree, in every case of this nature.
 

 [[Image here]]
 

 The power to impose sanctions is delegated solely to this Court; it therefore follows we have an obligation to conduct an independent inquiry of the record in , order to make our final determination of the appropriate action to be taken in each case. In so doing, we will accord careful consideration [to] the findings of fact and recommendations of the Commission, or its committee, which has had the opportunity to observe the demeanor of the witnesses.
 

 Id.
 
 In essence, since the Court was considering a California constitutional provision “almost identical” to our constitutional provision, the Court followed an approach this Court has taken in the past concerning the “borrowed statute” doctrine.
 
 Pope v. Brock,
 
 912 So.2d 935, 938-39 (Miss.2005).
 

 ¶ 32. Pursuant to our mandated review under
 
 Anderson,
 
 after many efforts to at least reach a majority decision on whether the facts surrounding the sexual allegations against Judge Boone toward Christina Twaddle have been established by clear and convincing evidence, the Court is unable to do so. Admittedly, the Court is splintered on this issue. However, Judge Boone’s
 
 ex parte
 
 communications with Officer Jones and Twaddle, as well as the inappropriate manner in which he handled the fine reduction, run afoul of our judicial canons. The facts surrounding these actions were established by clear and convincing evidence, and form the foundation for our decision in this matter.
 

 ¶ 33. In sum, we find that Judge Boone violated Canons 1, 2A, 2B, 3B(2), 3B(4), and 4A of the Judicial Code of Conduct, and that his actions constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, pursuant to Article 6, Section 177A, of the Mississippi Constitution of 1890, as amended. We now move to consideration of the appropriate sanctions in this case.
 

 II. WHETHER THE JUDICIAL MISCONDUCT WARRANTS REMOVAL FROM OFFICE AND ASSESSMENT OF COSTS IN THE SUM OF $1,907.05.
 

 ¶ 34. The Commission has recommended that this Court find Judge Boone violated various canons of our Code of Judicial Conduct and that, under Section 177A of the Mississippi Constitution of 1890, as amended, he should be removed from the office of justice court judge and assessed all of the costs of these proceedings in the amount of $1,907.05. For the reasons discussed below, we respectfully disagree with the Commission’s reeom-
 
 *185
 
 mendation and impose, instead, a ninety-day suspension without pay and assessment of costs in the amount of $1,907.05.
 

 ¶ 35. The appropriateness of sanctions is weighed based on the following factors: (1) the length and character of the judge’s public service; (2) whether there is any prior caselaw on point; (3) the magnitude of the offense and the harm suffered; (4) whether the misconduct is an isolated incident or evidences a pattern of conduct; (5) whether moral turpitude was involved; and (6) the presence or absence of mitigating or aggravating factors.
 
 Gibson,
 
 883 So.2d at 1157. The primary purpose of judicial sanctions is not punishment of the individual but “ ‘to restore and maintain the dignity and honor of the judicial office and to protect the public against future excesses.’ ”
 
 Miss. Comm’n on Judicial Performance v. Guest,
 
 717 So.2d 325, 329 (Miss.1998) (quoting
 
 In re Hamed,
 
 357 N.W.2d 300, 302 (Iowa 1984)). In light of our findings already discussed, we discuss the
 
 Gibson
 
 factors only as to Judge Boone’s judicial misconduct concerning the
 
 ex parte
 
 communications with Jones and Twaddle and the improper fine reduction.
 

 A. The Length and Character of Judge Boone’s Public Service
 

 ¶ 36. Judge Boone has been a justice court judge for three years. The record reveals no other public service on the part-of Judge Boone.
 

 B. Prior Caselaw on Point
 

 ¶37. Turning to Judge Boone’s
 
 ex parte
 
 contacts with Officer Jones, although there is no case directly on point, we find
 
 Mississippi Commission on Judicial Performance v. Vess,
 
 10 So.3d 486 (Miss.2009), to be somewhat similar. In
 
 Vess,
 
 this Court ordered a public reprimand, $2,000 fine, and costs of $100 for a judge who had set aside a guilty verdict after engaging in
 
 ex parte
 
 communications with the prosecutor and the victim’s family.
 
 Id.
 
 at 488.
 
 See also Sanford,
 
 941 So.2d at 211-12 (justice court judge suspended from office for thirty days for engaging in
 
 ex parte
 
 communications with sheriff, requesting that sheriff inform arresting officer to be late for court in order to dismiss DUI case for lack of prosecution);
 
 Willard,
 
 788 So.2d at 743 (justice court judge removed from office based on thirty-one counts of misconduct, including
 
 ex parte
 
 communications with law enforcement). Concerning the
 
 ex parte
 
 communications with Twaddle on the issue of the fine reduction, we have sanctioned judges in the past for similar misconduct.
 
 See Miss. Comm’n on Judicial Performance v. Anderson,
 
 32 So.3d 1180 (Miss.2010);
 
 Miss. Comm’n on Judicial Performance v. Britton,
 
 936 So.2d 898 (Miss.2006). In these two cases, the judges were sanctioned,
 
 inter alia,
 
 by way of a thirty day suspension from office; however, what makes Judge Boone’s
 
 ex parte
 
 communications with Twaddle more egregious than those depicted in
 
 Anderson
 
 and
 
 Britton
 
 is the fact that Judge Boone allowed Twaddle to ride around in public in his truck for a period of time, and, during the time that Twaddle’s case had yet to be finalized by way of the fine payment. Judge Boone’s actions exhibited a monumental lapse of sound judgment, because an undetermined number of Lincoln County citizens had the occasion to see one of their elected judges riding around town with a female litigant. Certainly the citizenry of Brookhaven and Lincoln County, upon learning of the later fine reduction, at the very least, could infer that Twaddle had received favorable treatment from Judge Boone via the fine reduction as a result of this
 
 ex parte
 
 communication.
 

 
 *186
 

 C. Magnitude of the Offense and Harm Suffered
 

 ¶ 38. The magnitude of the offenses in today’s case is significant and places the entire judiciary in a negative light. As the Commission found, Judge Boone “also involved another judge and his clerk as well as the Assistant Chief of Police in Brook-haven, Mississippi and made unfounded accusations against Twaddle’s attorney, Raymond Boutwell.”
 

 D. Pattern of Conduct
 

 ¶ 39. We need to look no further than the hearing testimony of deputy justice court clerk Melanie Green and Judge Boone, himself, discussed supra, to come to the inescapable conclusion that Judge Boone’s
 
 ex parte
 
 communications with law enforcement officials exhibit a habitual pattern of conduct which affects our ultimate decision on the appropriate sanction to impose in today’s case.
 

 E. Moral Turpitude
 

 ¶ 40. This Court has defined moral turpitude as “actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribery, extortion, or other such action which bring the judiciary into disrepute.”
 
 Gibson,
 
 883 So.2d at 1158, n. 2. Furthering our discussion of moral turpitude, this Court has stated:
 

 The bottom line of this element is that we must determine whether a judge’s conduct crosses the line from simple negligence or mistake, to
 
 willful conduct which takes advantage of a judge’s position for greed or other inappropnate motives.
 
 If the conduct willfully subverts justice, more punishment is warranted.
 

 Miss. Comm’n on Judicial Performance v. Gordon,
 
 955 So.2d 300, 305 (Miss.2007) (emphasis added). Even without considering the allegations of sexual conduct, we find from the record that the totality of Judge Boone’s actions, including lying to the Commission investigator, constitutes moral turpitude.
 

 F.Mitigating or Aggravating Circumstances
 

 ¶ 41. Although Judge Boone has not admitted his wrongful conduct on the record, he did acknowledge remorse in his statement to Buckley. Buckley testified at the hearing that Judge Boone had expressed regret about the incident.
 

 ¶42. The Commission’s recommendation, based for the most part on a finding of Judge Boone’s sexual molestation of Twaddle, was that Judge Boone be removed from office. But, we find, based on the totality of the circumstances revealed in the record before us, that Judge Boone’s actions require the imposition of a ninety-day suspension without pay, a public reprimand, and assessment of costs of this proceeding in the amount of $1,907.05.
 

 CONCLUSION
 

 ¶ 43. We are mindful of the many selfless contributions made by the duly appointed members of the Mississippi Commission on Judicial Performance. Not surprisingly, they once again have dutifully performed their mandated responsibilities in this case. Their allegiance to duty in this case, and in all other cases, does not go unnoticed by this Court. In the end, struggle though we do in these cases, as did this Court in
 
 Anderson,
 
 we likewise must carry out our mandated duties, which we alone can perform. This is our charge.
 
 In re Anderson,
 
 412 So.2d at 746. Judge Boone’s actions constituted willful misconduct prejudicial to the administration of justice which brought the judicial office into disrepute. Effective upon the date of the issuance of this Court’s mandate, we
 
 *187
 
 thus order Judge Ralph Boone to be suspended from the office of justice court judge, post one, Lincoln County, for a period of ninety days without pay; to be publicly reprimanded; and to be assessed costs of the proceedings in the amount of $1,907.05. The public reprimand shall be read in open court by the presiding judge on the first day of the next term of the Circuit Court of Lincoln County in which a jury venire is present, with Judge Boone present.
 

 ¶ 44. LINCOLN COUNTY JUSTICE COURT JUDGE RALPH BOONE SHALL BE SUSPENDED FROM OFFICE FOR A PERIOD OF NINETY (90) DAYS WITHOUT PAY, EFFECTIVE ON THE DATE OF ISSUANCE OF THIS COURT’S MANDATE; PUBLICLY REPRIMANDED; AND ASSESSED COSTS OF $1,907.05. THE PUBLIC REPRIMAND SHALL BE READ IN OPEN COURT BY THE PRESIDING JUDGE OF THE LINCOLN COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT IN WHICH A JURY VENIRE IS PRESENT AFTER THE ISSUANCE OF THIS COURT’S MANDATE, WITH JUDGE BOONE IN ATTENDANCE.
 

 WALLER, C.J., DICKINSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.
 

 [1]
 

 . Once counsel for the Commission had completed her examination of Judge Boone dur
 
 *176
 
 ing the Commission's case-in-chief, Judge Boone's counsel informed Judge' Howard that he did not wish to examine Judge Boone at that time, but that he would reserve his right to examine Judge Boone during the respondent’s case-in-chief. However, at the conclusion of Officer Jones's testimony in the respondent’s case-in-chief, Judge Boone’s counsel announced that the respondent would rest; and the Commission's counsel then announced that the Commission had no rebuttal evidence to offer.
 

 [2]
 

 . To include all the facts we find significant to today’s case, we have supplemented the Commission's findings of fact in footnotes.
 

 [3]
 

 . Buckley’s complete statement is as follows:
 

 Judge Boone was extremely upset. He stated to me immediately that he was a Christian
 
 and that he had allowed the devil to take hold of him.
 
 Judge Boone also expressed regret about the incident.
 

 As I said earlier, he was extremely concerned about his reputation and his judgeship, because of the nature of the complaint. As I said, I — throughout the time he was talking, I asked him to — to retain counsel.
 

 He told me that he did, in fact, call this girl but that he did it because Nolan Jones had told him about her.
 

 And I said, ‘T don't know what you mean by telling him about you.”
 

 "Well, I knew about her. And I did call her. I never should have.” He said that — I remember this explicitly — that
 
 he
 
 — the
 
 devil got ahold of his tongue and made it wicked
 
 and that — and he began to cry.
 

 (Emphasis added.)
 

 [4]
 

 .According to Judge Boone, while at the service station, Twaddle had told Judge Boone that her lawyer, Boutwell, who also was Brookhaven Municipal Judge, was “out to get” Judge Boone because Boutwell was aware that Judge Boone was interested in becoming Brookhaven Municipal Judge, thus replacing Boutwell. Again, according to Judge Boone, this was the reason that Twaddle wanted to ride with Judge Boone in his truck — to elaborate on this matter concerning Boutwell and Judge Boone. At the hearing before the Commission (committee). Judge Boone admitted that he was interested in the Brookhaven municipal judgeship because he "need[ed] the extra income to support my family, and my wife is retired.” Interestingly, Boutwell, at the Commission hearing, testified that, just recently, before the hearing, he had learned that Judge Boone, who is not an attorney, was trying to get appointed as Brookhaven Municipal Judge, "[b]ut that’s impossible, because you have to be an attorney to be a municipal judge in Brookhaven because of the number of citizens that we have.”
 

 [5]
 

 . Officer Jones testified at the hearing that he had called Judge Boone on the morning of April 15 and requested that Judge Boone help him with Twaddle because Officer Jones was interested in cultivating her as a confidential informant. Officer Jones testified that Twaddle was with him in his office when he made the phone call to Judge Boone. Twaddle testified that she was not present in Officer Jones’s office, nor was she aware of Jones’s request for help.
 

 [6]
 

 . Two phone conversations between Judge Boone and Twaddle that afternoon are recorded. In their first conversation, Twaddle
 
 *180
 
 inquired about her fine. Judge Boone replied, "[W]hy don't you just come by the courthouse and we'II see what we can do with it?” Twaddle then asked whether she needed to do community service. Judge Boone responded, "No, no, we'll see. I’ll have to get with Nolan [Jones] and see what he wants to do with it.... Just holler at me ... and we’ll see if I can't help you out with it.” The dialogue from this first conversation indicates that Judge Boone had not yet modified Twaddle’s fine. During their second conversation, Twaddle asked about the amount she had to pay. Judge Boone said, "I got it fixed for you.” He said he had reduced her fine by "[a] hundred dollars.” He then apparently checked his computer and told her that she would need to pay $139. Considering both conversations together, it is reasonable to infer that Judge Boone had altered Twaddle’s fine at some point between the two phone calls.
 

 [7]
 

 . Boutwell maintained that Judge Boone had imposed a fine in excess of $230 that morning. Boutwell, who serves as a municipal judge, explained that he remembered the amount of Twaddle’s fine because, as a municipal judge, he had imposed fines in similar cases. Boutwell said that $186.50 was a typical fine associated with a case such as Twaddle’s. He specifically recalled being "a little ill” that Twaddle’s fine was more than this.
 

 [8]
 

 . When Buckley initially discussed the matter with Melanie Green, Green told Buckley that Twaddle’s fine was changed in the afternoon. At the hearing, Green contradicted her earlier statement and stated that the fine was changed in the morning, during open court.
 

 [9]
 

 . Rule 1.05 states:
 

 No person shall undertake to discuss with, or in the presence of, or hearing of the judge, the law or facts or alleged facts of any case then pending in the court, or likely to be instituted therein, except in the orderly progress of the trial, and arguments or briefs connected therewith; nor attempt in
 
 *182
 
 any manner, except as stated above, to influence the decision of the judge in any manner.
 

 [10]
 

 . It is apparent that this Court struggled mightily with this task, since the mandated review of judicial misconduct cases was foreign to the traditional appellate standards of review such as de novo, abuse of discretion, manifest error and the like, when considering cases appealed from our trial courts.
 

 [11]
 

 . On this point, in
 
 Anderson,
 
 this Court stated that "[c]ourts in other jurisdictions with constitutional provisions as our own Section
 
 177A
 
 have attempted to construe these provisions.”
 
 In re Anderson,
 
 412 So.2d at 745.