RANDOLPH, Justice,
for the Court:
¶ 1. The Mississippi Commission on Judicial Performance (“Commission”) recommends a public reprimand, suspension for thirty days without pay and assessment of the costs of these proceedings for Justice Court Judge Theresa Brown Dearman of the West District of Stone County. Dear-man signed an Agreed Statement of Facts and Proposed Recommendation. The Court finds the agreed-upon proposed sanctions appropriate and orders them as recommended.

PROCEEDINGS BEFORE THE COMMISSION

¶ 2. In November 2009, December 2009, and March 2010, the Commission filed formal complaints charging Judge Dearman with willful misconduct in office and conduct prejudicial to the administration of justice bringing the judicial office into disrepute in violation of the Mississippi Code of Judicial Conduct (“Code”). Such conduct is actionable under Article 6, Section 177A of the Mississippi Constitution. The complaints charged violations of Canons 1, 2A, 2B, 3B(1), 3B(2), 3C(1), and 3E(1) of the Code.
¶ 3. In lieu of a hearing, the Commission and Judge Dearman signed an Agreed Statement of Facts and Proposed Recommendation. See M.C.J.P. Rule 8. Following acceptance of the recommendation by the Commission at its regular monthly meeting, the record (findings, clerk’s papers, and transcript) was filed with this Court. See Miss. RApp. P. 10(a); M.C.J.P. Rule 10B (Mississippi Rules of Appellate Procedure apply to all Commission proceedings before this Court). As there was no hearing, the transcript consisted only of the agreed statement of facts and proposed recommendation. Judge Dearman made no objection to the content of the record.
¶ 4. In September 2010, Judge Dearman and the Commission signed and filed with this Court a Joint Motion for Approval of Recommendation. Judge Dearman filed a simultaneous brief in support of the joint motion. However, Judge Dearman’s brief included factual allegations and assertions that dispute portions of the agreed statement and joint motion, and also attached proposed exhibits not included in the record before the Commission.
¶ 5. The Commission moved to “Strike Portions of Respondent’s Memorandum Brief in Support of Joint Motion for Approval of Recommendations filed by [the Commission].” Judge Dearman responded, arguing that the record was void of items that would have been included, had there been a hearing, and that the additional and contradictory material was presented to aid this Court in conducting its review. In our order granting the Commission’s motion, we found that the exhibits attached to Judge Dearman’s brief and *115 the contradictory factual allegations and assertions were an impermissible attempt to add to the record. See Miss. R.App. P. 10(f). Although Judge Dearman is allowed to submit a brief, this Court will not consider exhibits or factual allegations and assertions that were not presented below. See M.C.J.P. Rule 10D. This Court examines only the record as presented.

AGREED FACTS

¶ 6. In April 2006, Judge Dearman presided over the initial appearance of Philipe D. White, who was charged with felony possession of a controlled substance, cocaine base. Judge Dearman set White’s bail at $2,500 and, as a condition of bail, required White to attend church at least once a week. In June 2006, a probation officer charged White with violating the terms of release. Judge Dearman issued a mittimus ordering that White be arrested and allowed no bond. When White was arrested, Judge Dearman set bond at $50,000. In September 2006, after White had waived a preliminary hearing, Judge Dearman ordered White released on $2,500 bond on the same conditions. A week later, the grand jury issued a true bill. In November 2006, White violated his release terms. As before, Judge Dear-man ordered that White be arrested and allowed no bond.
¶ 7. In May 2007, a Mississippi Bureau of Narcotics (“MBN”) agent filed an affidavit against Onnie Bond for possession of marijuana with intent to distribute. As a part of the same incident, a Mississippi Highway Patrol (“MHP”) trooper cited Bond for driving under the influence and five other traffic offenses. On the evening the charges were filed, Judge Dearman called the trooper and inquired about reducing the drug charge to a misdemeanor, as she questioned whether the quantity was enough to support a felony charge. Later that night, Judge Dearman called again, asking the trooper to authorize the release of Bond’s vehicle. The trooper properly declined to intervene, explaining that it was an MBN case and that the vehicle was being inventoried and might be held as evidence.
¶ 8. In October 2008, Judge Dearman set bond at $60,000 at William Ritzer’s initial appearance on felony charges for possession of a controlled substance. After the case was referred to the district attorney’s office for prosecution, Judge Dearman sua sponte reduced the bond to $10,000 and set conditions on the reduction, including Ritzer agreeing to enter a drug-rehabilitation program. Ritzer’s appearance bond was executed the same day. Approximately two months later, after Rit-zer had completed the program, Judge Dearman set new bail conditions and erroneously entered the bond amount as $5,000.
¶ 9. On February 2, 2009, Olan Brian Brown (Judge Dearman’s nephew) and his girlfriend, Shannon Jones, were charged with domestic violence and simple assault for their involvement in a domestic dispute. On the same day, Judge Dearman presided over the initial appearance of both individuals and set conditions for their release. Brown’s bond conditions were less stringent than Jones’s.
¶ 10. In March 2009, Judge Dearman issued a warrant for the arrest of Ricky Wayne Polk for grand larceny in the theft of property valued at $6,000. At Polk’s initial appearance, Judge Dearman sua, sponte amended the charge to petit larceny. After the county attorney contested the amendment, the case was transferred to the district attorney’s office. Subsequently, a grand jury issued a true bill for grand larceny.
¶ 11. In April 2009, Judge Dearman presided over Frank Drew Rettig’s initial *116 appearance on felony charges of manufacturing methamphetamine and four misdemeanor traffic violations. In August 2009, Rettig waived a preliminary hearing, and Judge Dearman, without objection, reduced his bond to $10,000. In October 2009, Judge Dearman further reduced his bond to $2,000 and set conditions for the reduction, including Rettig agreeing to enter a drug-rehabilitation program. A week later, Judge Dearman increased his bond to $5,000, noting that Rettig could not enter the program. In a similar case in October 2009, Judge Dearman set Christopher T. Gray’s bond at $5,000 and, as a condition of his bond, required him to attend church twice a week. He had been charged with sale of a controlled substance.
¶ 12. In May 2009, Myriah Perry was charged with grand larceny for stealing property, including a digital camera. A note in the court file indicated that, if the camera was returned by a certain date, no charges would be filed. Judge Dearman learned through an ex parte communication that the camera had been returned. Based on this ex parte communication, she reduced the charge to a misdemeanor. Later, she dismissed the case under a mistaken belief that Perry was a minor and that the Youth Court would take jurisdiction.
¶ 13. Judge Dearman has made her views known to the public through her writings about the problems caused by the use of illegal drugs. She has expressed her view that the Stone County Sheriffs Department has been ineffectual in dealing with the problem. In these writings, she has invited ex parte communications on the subject. In May 2008, she wrote a letter to the sheriff, attaching to it a “communique” entitled, “Illegal Drugs, Effects, <& Do We Have a Problem?” In the communique, she stated, “So little is being done about the drugs in our County, State and Country.” She included her office phone number and invited “community leaders, law enforcement, churches, educators, and citizens” to call and discuss the problem. She also authored columns in a local newsletter in which she discussed her differences with the sheriff and advocated for her policy in drug cases of setting low bond amounts with conditions. In one column, she invited her readers to attend initial-appearance hearings at her court, adding, “Afterwards, I would appreciate your thoughts and ideas.”

ANALYSIS

¶ 14. Our review is guided by the rules we adopted, which “shall be liberally interpreted so as to carry out the mandate of the electorate by its approval of Section 177A of the Mississippi Constitution of 1890.” M.C.J.P. Rule 1C. We “‘accord careful consideration [to] the findings of fact and recommendations of the Commission ....’” Miss. Comm’n on Judicial Performance v. Boone, 60 So.3d 172, 176 (Miss.2011) (quoting In re Removal of Lloyd W. Anderson, Justice Court Judge, 412 So.2d 743, 746 (Miss.1982)). With all due consideration to the concerns stated in the dissent, the Statement of Facts and Proposed Recommendation is not contested by the parties in the record before us. Thus, no justiciable issue is before us regarding facts or recommendations. We are left only with our duty to impose a constitutionally permissible sanction. See Miss. Const. art. 6 § 177A.
I. Whether Judge Dearman’s conduct violated Article 6, Section 177A of the Mississippi Constitution.
¶ 15. We agree with the Commission that Judge Dearman violated Canons 1, 2A, 2B, 3B(1), 3B(2), 3B(7), 3C(1), and 3E(1) of the Code. We find by clear and *117 convincing evidence that Judge Dearman’s conduct was willful, as well as prejudicial to the administration of justice, bringing her judicial office into disrepute. The judge’s conduct is in violation of Article 6, Section 177A of the Mississippi Constitution.
1116. Judge Dearman argues that “most of the Complaints against [her] are matters involving the exercise of judicial discretion, disagreements with [her] application of the law, and honest mistakes.” She now argues that her actions were not misconduct, but derived from being a fallible human, inevitably subject to occasional error “while making hundreds of decisions often under pressure.” This Court has defined the term “willful misconduct” to include “any knowing misuse of the office, whatever the motive.” In re Anderson, 412 So.2d 743, 745 (Miss.1982) (quoting In re Nowell, 293 N.C. 235, 237 S.E.2d 246, 255 (1977)). By engaging in the following conduct, Judge Dearman knowingly misused her office by: (1) sua sponte reducing bonds and charges without proper motion; (2) conditioning the reduction on church attendance; (3) exceeding her authority by altering bonds after a defendant had been released on bond or had waived preliminary hearing, or after a preliminary hearing had been conducted; (4) permitting others to create the impression that they were in a special position to influence her as a judge; (5) initiating and inviting ex parte communications; and (6) presiding at her nephew’s initial appearance. Her motivations (including her belief that her system for handling drug offenders is more effective and better serves the public) are irrelevant to a finding of willful misconduct in office. See Miss. Comm’n on Judicial Performance v. Vess, 10 So.3d 486, 489 (Miss.2009).
¶ 17. This Court has explained that “conduct prejudicial to the administration of justice that brings the judicial office into disrepute” includes, by necessity, all willful misconduct. Anderson, 412 So.2d at 745. However, such conduct may also include behavior brought about “through negligence or ignorance not amounting to bad faith.... The result is the same regardless of whether bad faith or negligence or ignorance are involved and warrants sanctions.” Miss. Comm’n on Judicial Performance v. Boykin, 763 So.2d 872, 875 (Miss.2000) (quoting In re Anderson, 451 So.2d 232, 234 (Miss.1984)).
¶ 18. Judge Dearman agreed with the Commission that her conduct violated several canons of the Code, particularly: Canon 1 (charging judges to establish, maintain, and enforce high standards of conduct to uphold the integrity of the judiciary); Canon 2A (charging judges to act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary); Canon 2B (charging judges to avoid lending the prestige of their office to advance the private interests of others); Canon 3B(1) (charging judges not to hear and decide matters requiring disqualification); Canon 3B(2) (charging judges to be faithful to the law and not be swayed by public clamor); Canon 3B(7) (charging judges not to “initiate, permit, or consider ex parte communications” other than those expressly excepted); Canon 3C(1) (charging judges to discharge their administrative responsibilities without bias or prejudice and to cooperate with other judges and court officials); and Canon 3E(1) (charging judges to disqualify themselves when their impartiality may be questioned or on grounds provided by law or judicial canon).
¶ 19. Judge Dearman agreed with the Commission’s recommended sanctions. She acknowledges that she violated several canons of the Code and that her actions constituted willful misconduct preju *118 dicial to the administration of justice, bringing her judicial office into disrepute. We accept the agreed-upon findings and recommendation. We find that Judge Dearman’s misconduct was willful and prejudicial to the administration of justice, bringing the judicial office into disrepute.
II. Whether the proposed sanctions should be ordered.
¶ 20. The sanctions agreed upon by the Commission and Judge Dearman are a public reprimand, suspension for thirty days without pay, and payment of the cost of these proceedings in the amount of $100. Article 6, Section 177A of the Mississippi Constitution grants this Court the power, upon recommendation of the Commission, to order the removal, suspension, fine, public censure, or reprimand of any judge in Mississippi. Miss. Const. art. 6, § 177A. The sanctions imposed should be consistent with those in other cases and “ought [to] fit the offense.” In re Inquiry Concerning Bailey, 541 So.2d 1036, 1039 (Miss.1989). The six-factor Gibson analysis is applied “generally to the determination of all sanctions in judicial misconduct proceedings.... ” Miss. Comm’n on Judicial Performance v. Gibson, 883 So.2d 1155, 1158 (Miss.2004), overruled on other grounds by Boone, 60 So.3d 172.

1. The length and character of the judge’s public service

¶21. Judge Dearman has served her district as a justice-court judge for six years. The record is silent as to the character of her public service.

2. Whether there is any prior caselaw on point.

¶ 22. We determine whether the recommended sanctions fit the offense and are consistent with previous holdings of this Court. The cases cited infra involve justice-court judges accused of misconduct, including ex parte communications, abuse of process, procedural errors, and lending the prestige of office to advance the private interests of others.
¶23. In Mississippi Commission on Judicial Performance v. Fowlkes, 967 So.2d 12 (Miss.2007), this Court found that the recommended sanctions for ex parte communications were insufficient, and ordered a public reprimand, a thirty-day suspension without pay, and the payment of costs. Id. at 16. However, Judge Fowlkes had been disciplined for the same violation and had, just a year earlier, acknowledged the impropriety of ex parte communications. Id. at 15. In Vess, this Court accepted the Commission’s recommendation of a public reprimand and a fine of $2,000 for violations including ex parte communications. See Vess, 10 So.3d at 495. The Court noted that Vess had been disciplined for the same misconduct a decade earlier. Id. at 494. Likewise, in Mississippi Commission on Judicial Performance v. Britton, 936 So.2d 898 (Miss.2006), this Court ordered a public reprimand, a thirty-day suspension, and the payment of costs for a pattern of ex parte communications, including setting aside a judgment based on ex parte communications. Id. at 905, 907. In egregious cases, this Court has removed judges for engaging in a pattern of misconduct including ex parte communications. See Miss. Comm’n on Judicial Performance v. Willard, 788 So.2d 736 (Miss.2001); Miss. Comm’n on Judicial Performance v. Spencer, 725 So.2d 171 (Miss.1998).
¶ 24. Here, although this case involves multiple instances of ex parte communications and an agreed finding of an overall pattern of violations, this is Judge Dear-man’s first formal commission action. Her ex parte communications, taken alone, do *119 not constitute a pattern as egregious as that in Britton. She initiated ex parte communications with a law-enforcement officer. In another case, she reduced a felony charge to a misdemeanor based on information received ex parte. She also invited ex parte communications through her writings.
¶ 25. This Court has disciplined judges for abuse of process and procedural errors. See Miss. Comm’n on Judicial Performance v. Roberts, 952 So.2d 934 (Miss.2007); Willard, 788 So.2d at 738-39. In Roberts, the judge admitted to numerous violations, was in his first term of office, and had never been formally disciplined by the Commission. Id. at 935-37, 942. This Court accepted the Commission’s recommendation and ordered a public reprimand, thirty-day suspension, and payment of costs. Id. at 942. Judge Dearman’s abuse-of-process and procedural violations are comparable in number and severity to Roberts’s. She also is in a similar position regarding her overall experience and disciplinary history. Judge Dearman sua sponte reduced charges in two cases, reduced bonds without authority, and, in three cases, improperly altered bond terms.
¶ 26. This Court has disciplined judges for conduct creating the appearance of impropriety by failing to recuse themselves from a case involving a relative. Miss. Comm’n on Judicial Performance v. Cole, 932 So.2d 9 (Miss.2006), overruled on other grounds by Boone, 60 So.3d 172. See also Miss. Comm’n on Judicial Performance v. Brown, 918 So.2d 1247 (Miss.2005). Judge Cole reinstated his grandson’s driver’s license and attempted to use his influence to keep him out of a state facility. Cole, 932 So.2d at 11. This Court found that “Judge Cole should not have involved himself in any facet of the pending matters and should have recused himself from any matters involving a relative.” Id. Here, Judge Dearman presided over the initial appearance of her nephew, “a person within the third degree of relationship.” Miss.Code of Judicial Conduct Canon 3E(1). Even if we were to consider Judge Dearman’s new argument that Brown and Jones were not harmed, as they declined the opportunity to object, it would be unhelpful to her. The harm to be considered here is the harm to the public’s impression of the judiciary. See Vess, 10 So.3d at 493. Here, Judge Dear-man’s handling of her nephew’s case created the appearance of impropriety, especially considering the inconsistent result.
¶ 27. Likewise, Judge Dearman’s writings created an appearance of impropriety, harming the public’s impression of the judiciary. She might have given, as the Commission found and Dearman agreed, the impression that she was advocating in favor of drug defendants by setting low bond amounts. Conversely, she could have given the impression that a drug defendant could not receive a fair trial in her court. Further, her call for a public debate and for public input on her handling of initial-appearance hearings allowed the impression that she would let public sentiment sway her judicial decisions.

3. The magnitude of the offense and the harm suffered

¶28. Judge Dearman’s misconduct involved nine cases over a period of more than three years and affected at least twenty-two litigants and complainants, including the parent of a minor, a county prosecutor, an MBN agent, an MHP trooper, two sheriffs deputies, and a probation officer. Her misconduct also affected the operation of other courts, as well as the district attorney’s office, a bonding company, and a drug-rehabilitation center. The harm caused by her public writings *120 and her handling of her nephew’s case is detailed above.
¶ 29. Avoiding the appearance of impropriety is particularly important at the justice-court level because of the harmful effect of such an appearance on the public’s impression of the entire judiciary. This Court has stated, “[ojfficial integrity of our Justice Court Judges is vitally important, for it is on that level that many citizens have their only experience with the judiciary.” Vess, 10 So.3d at 493 (quoting In re Inquiry Concerning Garner, 466 So.2d 884, 887 (Miss.1985), overruled on other grounds by Boone, 60 So.3d 172).

k. Whether the misconduct is an isolated incident or evidences a pattern of misconduct.

¶ 30. The series of formal complaints at issue here represent Judge Dearman’s first formal disciplinary action, although she has had one previous informal action regarding unrelated conduct. The Commission found, and Judge Dear-man agreed, that the numerous violations constitute a pattern. Judge Dearman committed similar actions during a period of more than three years. These actions were the result of a policy decision that she had announced and advocated to the public. A history of formal disciplinary actions is not necessary to a finding of a pattern if a judge has committed numerous violations. See Miss. Comm’n on Judicial Performance v. Bradford, 18 So.3d 251, 256 (Miss.2009) (ten violations); Miss. Comm’n on Judicial Performance v. Cowart, 936 So.2d 343, 350 (Miss.2006) (three violations). We find a pattern of misconduct.

5. Whether moral turpitude was involved.

¶ 31. The joint memorandum brief states that Judge Dearman’s “actions do not rise to the level of conduct involving moral turpitude.” This Court has stated, “Moral turpitude includes, but is not limited to, actions which involve interference with the administration of justice, misrepresentation, fraud, deceit, bribei’y, extortion, or other such actions which bring the judiciary into disrepute.” Gibson, 883 So.2d at 1158 n. 2. In Mississippi Commission on Judicial Performance v. Gordon, 955 So.2d 300 (Miss.2007), this Court described moral-turpitude analysis as follows:
The bottom line of this element is that we must determine whether a judge’s conduct crosses the line from simple negligence or mistake, to willful conduct which takes advantage of a judge’s position for greed or other inappropriate motives. If the conduct willfully subverts justice, more punishment is warranted.
Id. at 305.
¶ 32. In Vess, this Court examined the moral-turpitude element at length. See Vess, 10 So.3d at 493-94. The Vess Court found that the violations brought the judicial office into disrepute, but did not meet the Gordon standard for moral turpitude. Id. at 494. We find no evidence that Judge Dearman’s conduct involved moral turpitude.

6. The presence or absence of mitigating or aggravating factors

¶ 33. We find neither the presence nor absence of mitigating or aggravating factors.
¶ 34. We considered the agreed sanctions and performed a Gibson analysis. We accept the agreed recommendation. We find that the recommended sanctions fit the offense and should be imposed.

CONCLUSION

¶ 35. We agree with the Commission’s recommendation, and we order Justice *121 Court Judge Theresa Brown Dearman of the West District of Stone County to be publicly reprimanded, suspended from office for thirty days without pay, and assessed costs in the amount of $100. Judge Dearman’s public reprimand shall be read in open court on the first day of the next term of the Circuit Court of Stone County in which a jury venire is present, with Judge Dearman present and standing before the presiding judge.
¶ 36. STONE COUNTY JUSTICE COURT JUDGE THERESA BROWN DEARMAN SHALL BE SUSPENDED FROM OFFICE FOR A PERIOD OF THIRTY (30) DAYS WITHOUT PAY, EFFECTIVE ON THE DATE OF ISSUANCE OF THIS COURT’S MANDATE; PUBLICLY REPRIMANDED; AND ASSESSED COSTS OF $100. THE PUBLIC REPRIMAND SHALL BE READ IN OPEN COURT BY THE PRESIDING JUDGE OF THE STONE COUNTY CIRCUIT COURT ON THE FIRST DAY OF THE NEXT TERM OF THAT COURT IN WHICH A JURY VE-NIRE IS PRESENT AFTER THE ISSUANCE OF THIS COURT’S MANDATE, WITH JUDGE DEARMAN IN ATTENDANCE.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., LAMAR, CHANDLER, PIERCE AND KING, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.